## BARTHOLOMEW v. MERCHANTS' INSURANCE COMPANY.

1. **Insurance: APPLICATION: OMISSION OR MISSTATEMENT OF AGENT: INCUMBRANCE.** If an insurance agent has simply power to receive and forward applications to the company as the basis upon which it will decide in relation to issuing policies, and the applicant knows, or is bound to know this, and knows of the provision in the application which states "that the foregoing is a correct description of the property, and on which the insurance will be predicated and a warrantee on his part," then he must see that the statements and representations contained in the application are not essentially untrue.

2. —— But if, on the other hand, the agent furnishes and undertakes to fill up the application, and if, in so doing, he is correctly informed respecting an incumbrance on the property, and if the assured is misled, by the acts and conduct of the agent, into supposing that the agent has taken down his answers truly, and that the application is correct, and if, through the fault of the agent, he does not know the contrary,—then the company, having received the premium, cannot successfully set up the existence of the incumbrance as a defense to an action on the policy.

Bartholomew v. Merchants' Ins. Co.

3. —— POWER OF SPECIAL AGENT. An agent appointed simply to solicit and forward applications to the company for their acceptance or rejection of the risk, has, it would seem, no power to bind the company by a verbal permission to the insured to keep gunpowder in violation of the terms of the policy ; and the company will not be bound or estopped by such permission, where it is not shown that it knew of these or similar acts, and did not object, or that the agent held himself out as a general agent, or purposely concealed the limited character of his agency.

4. —— ESTOPPEL. Where, in an action upon an insurance policy, the company sets up as a defense, that an incumbrance existed on the property insured, which the plaintiff represented in his application was free from incumbrances ; and also that, in violation of the terms and conditions of the policy, the assured kept gunpowder on the premises insured, it is competent for the plaintiff to avoid such defense, by way of estoppel, consisting of the acts of the company and its agents.

*Appeal from Henry District Court.*

THURSDAY, JULY 23.

INSURANCE : POWERS OF AGENTS : APPLICATIONS : FILLING UP OF INSTRUCTIONS : ACTIONS ON INSURANCE POLICY, ETC.— The petition alleges, that, on the 25th day of April, 1865, the defendant (incorporated by the laws of Illinois, and located at Quincy in that State) issued a policy of insurance to the plaintiff, to date from April 19, 1865, and to continue in force for one year. That by the policy the defendant agreed to insure the plaintiff against loss or damage by fire to the amount of $400, on his store building in the town of Independence, Van Buren county, Iowa, and to the amount of $1,600, on the goods and merchandise in the said building. That on the 20th day of August, 1865, the building and goods so insured were destroyed by fire ; that due notice was given, preliminary proofs made, and that, " in all respects, the conditions of the policy were conformed to by plaintiff ; " therefore plaintiff demands judgment for the $2,000 and interest.

The answer admits the issue of the policy by the defendant to the plaintiff, and the destruction of the property by fire, as alleged. It then denies that plaintiff has complied with the terms and conditions of said policy; but, on the contrary, it avers, that, in violation of said terms and conditions, he kept for sale, and sold, gunpowder in the building and store insured; and it is further alleged, that it was in consequence of so keeping said powder, that all, or at least a considerable portion, of the property was destroyed; that, had powder not been so kept, a large portion of the goods might have been saved.

As another defense, the answer alleges that the application is made part of the policy, and a warranty on the part of the assured, and that in the said application, in answer to the question, " Is said property incumbered, by what, and to what amount?" the defendant answered " No;" whereas, in truth, both the store building and the goods insured, were then incumbered by unsatisfied mortgages from the plaintiff to one Davis.

On the trial, it was clearly shown that the plaintiff, after the insurance, kept in the store one keg of powder for the purpose of retail, and that the plaintiff declared at the fire that a portion of the keg of powder was then in the building. It was shown that the powder was kept in the front building, that the fire originated in the back building, and was discovered before it had reached the front one. And it was admitted by the plaintiff's counsel in argument that the evidence shows, as it undeniably does, that spectators at the fire made no efforts to save any portion of the goods, because they feared an explosion of powder in the building.

The defendant claims that in so keeping powder the plaintiff violated the fifth and sixth conditions of the policy. The fifth condition, which is declared to be part of the policy, is as follows: " Camphene or any other

*explosive substance* is expressly prohibited from being deposited, stored, used, or kept in any building insured, or containing property insured, by this policy, unless by special consent of the secretary of this company in writing."

The sixth condition declares, that, " if, during the existence of this policy, the risk shall be increased by any means within the control of the insured, or by the occupation of the premises for more hazardous purposes than are permitted by this policy, the same shall be void."

The plaintiff, not denying that powder was so kept, not denying that it is an " explosive substance," within the terms of the fifth condition above quoted, and not claiming to have procured any special consent of the secretary to keep it, relied, to avoid the effect of these facts, upon certain other facts which he claimed estopped the defendant to make this defense, or amounted to a waiver of this condition of the policy.   These facts will be referred to hereafter.

On the trial it was shown, that, in the application, the defendant stated the property to be free of incumbrance, whereas it was clearly established, and even admitted by the plaintiff as witness on the stand, that at and before the date of the policy both the real and personal property insured were incumbered by mortgages to one Davis.

The condition of the policy which the defendant claims was thus violated is the eighth, which reads as follows : " Should there be an incumbrance on the premises mentioned in the policy at the time the insurance is effected, not mentioned in the application, this policy shall be void and of no effect."

Not denying the existence of the incumbrances, and not denying, that, by the terms of the eighth condition above quoted, this would avoid the policy, the plaintiff relies, to escape this result, upon certain other facts, which

he likewise claims will estop the defendant from making this defense, or amount to a waiver of this condition of the policy.

An outline of these facts, as applicable to both defenses, will now be briefly given.

The defendant was a foreign insurance company located at Quincy, Illinois. To enable it to extend its business into Iowa, it had here a State agent, whose duty it was, among other things, to select, appoint and oversee soliciting and local agents. In January, 1865, the State agent of the defendant appointed one Leslie Stevens, of Mount Pleasant, Iowa, as a "traveling agent" of the defendant, for the purpose of soliciting risks; agreeing to allow Stevens to retain for his services the "policy and survey fee, not to exceed $2.50, and $1.50 of the cash premium received and collected on each and every application for insurance in the said company, taken by him, that shall be approved by the company." As between the insurance company and Stevens, it is clearly shown, that the latter was simply a soliciting agent, to procure applications for insurance, and to transmit these and premiums to the company; that he had no power to issue policies or to make contracts which would bind the defendant to issue policies; nor had he power to modify or change the terms of policies.

Whether, as to third persons, Stevens would be considered as having greater powers, was made a question in the instructions to the jury, which will be found referred to in the opinion. Stevens was furnished with a book of instructions for his own guidance, and with blank forms of "applications." On the 19th day of April, 1865, he applied to the defendant to effect an insurance on the property in question. After some hesitation, the defendant consented, and Stevens wrote out or filled up the blank application for insurance, and the plaintiff signed.

the same. The only testimony on this point was that of the plaintiff, the material portion of which is as follows: "The agent who came to solicit me to take a policy from the defendant was a Mr. Stevens; I had no acquaintance with him previous to that time; he called several times; I don't think I saw him fill up the application on which the policy was issued; Stevens (afterward) delivered to me the policy at my store; my clerk was present; don't know of Stevens' writing to the insurance company; he received premium money and note, which note I subsequently paid him; I had no knowledge that this agent had no authority to issue a policy or represent the company; my dealing was wholly with Stevens; I have not yet read the application on which the policy issued." Against defendant's objection the plaintiff was allowed further to testify as follows: "When the agent, Stevens, applied to me to take an insurance risk, I told him there was an incumbrance on the property to be insured, of from $500 to $800; I asked him if I could keep one keg of powder, and he said I could; I told him powder was a staple article and I was obliged to keep it; he said he allowed me to keep a twenty-five pound keg of powder; when he afterward handed me the policy, he said he had just got back from Keosauqua, where he had seen Mr. Wright, the attorney of Davis, who held the mortgages, and that the incumbrance would make no difference; my clerk was present." It was admitted that the clerk if present would testify, subject to the same objections, to the same facts; Stevens was not examined, it being shown by the defendant that he could not be found; it appeared from other evidence, that Stevens when he received this application on the 19th day of April, caused the same to be sent to the defendant at Quincy; that the company approved the same on the 25th day of April, and on that day forwarded for delivery to plaintiff, the policy now in

suit, dated on the said 25th of April, and which, as the plaintiff above testifies, was afterward delivered to him by Stevens.

The jury found a verdict for the plaintiff, and the defendant appeals.

*D. F. Miller* for the appellant.

*Rankin & McCrary* for the appellee.

DILLON, Ch. J.— I. The numerous errors assigned relate to the rulings of the court in the reception and rejection of evidence on the trial, and to instructions given, refused and modified. It would be prolix to allude to these in detail. They present, in various forms, the same questions, and these questions are, in substance: What, as respect the plaintiff, were the powers of the agent, Stevens? Were the company affected by the alleged verbal communication of knowledge of the incumbrances to Stevens, he having failed to insert a truthful answer in this respect in the application? Were the company bound, by the verbal statement of Stevens, at the time of receiving the application, that the assured would be allowed to keep a twenty-five pound keg of powder?

*1. INSURANCE: application: omission or misstatement of agent: incumbrance.*

On these subjects, the court, at plaintiff's instance, instructed the jury as follows: " 9. If the agent was notified of the incumbrance by plaintiff, and the agent, through neglect or oversight, or from any cause like these, omitted to note the incumbrance in the application, then the existence of the incumbrance is no defense to this suit." Other instructions, varying in language, but asserting the same principle, were likewise given. Instructions asked by the defendant, embodying the idea, that if there was an incumbrance not named in the application, the policy based upon such application was void, and that notice to

the soliciting agent would not bind the company, were refused.

This subject was somewhat considered by this court in *Ayres* v. *The Hartford Ins. Co.*, 17 Iowa, 176. It was there stated, if not held, that, whether the company was bound by the failure of the agent, in writing the application, to take down statements made by the applicant, or by his taking them down incorrectly, depended upon the powers of the agent; that, if he had simply power to receive and forward applications, the company would not be bound; but if he had greater powers, either in fact or as regards the public or the assured, the rule would be different. The instructions of the court, upon this branch of the case, made the defendant bound by notice of the incumbrance to Stevens, even though the latter was known by the plaintiff to be a special agent with limited powers, to wit, with power simply to receive and forward applications. The application was signed by the plaintiff, and it expressly stated, "the foregoing is a correct description of the property to be insured, on which the insurance will be predicated, and a warranty on the part of the assured."

The facts in the present case are somewhat different from those of the Ayres case, just cited, and the instructions to the jury should have had reference to this difference.

It is our opinion, in view of the facts of the present case, that the court in the 9th instruction above quoted, and in others of the same purport, stated the effect of knowledge on the part of Stevens of the incumbrance, and of his failure to note it in the application, too broadly. On this point the jury should, in substance, have been thus instructed: If the plaintiff knew of the provision in the application which stated "that the foregoing is a correct description of the property to be insured, and

on which the insurance would be predicated, and a warrantee on his part," and if he knew or had reason to know that Stevens had simply power to take and forward applications, and if he knew that the application which he signed was to be forwarded to the company and would be submitted to it as the sole basis on which it or its directors would act in accepting or rejecting the risk, in such case, he must see that its statements and representations are not essentially untrue. But if, on the other hand, the agent of the company furnished and undertook to fill up the application, and if in so doing he was correctly informed respecting the incumbrance, and if the plaintiff was misled by the acts and conduct of the agent into supposing that the agent had taken down his answers truly, and that the application was correct, and if through the fault of the agent he did not know the contrary, then the company, having received the premium, cannot successfully set up the existence of the incumbrance as a defense to an action on the policy.

These instructions proceed upon the idea that Stevens, in taking and filling up the application, was not the agent of the applicant, but the agent of the company.

This is not the view taken by the Supreme Court of Massachusetts, which holds that the agent of the insurrance company, in receiving and filling up applications, becomes the agent of the applicant. See cases cited, 17 Iowa, 191.

But this view has recently received the sanction of the Court of Appeals of New York (*Rowley* v. *Empire Ins. Co.*, 36 N. Y. 550, 1867); and this court, upon mature deliberation, regards it, with the limitations herein indicated, as the sounder and better rule. See, also, *Anson* v. *Winneshiek Ins. Co.*, at present term.

The reasons for this view are many.

1. The companies send out agents to take applications,

and furnish them with blanks for that purpose. In the case at bar there is in the record a book of instructions from the defendant to its agents, containing over two closely printed pages of "instructions for filling applications."

2. The companies know how important it is to have these applications correctly made out; and, as a rule, they expect their agents to fill them up. In practice, we are satisfied this is generally done by the agents.

3. To comply with all the many requirements of the companies in relation to filling up applications is difficult for the mass of insurers; and if the applicant truly answers the questions asked, and the agent does not truly take down the answers, but deceives and misleads (even though not designedly) the applicant into the belief that his application is all right, and it is signed by the applicant under the belief thus superinduced by the agent of the company, the latter must, except under special circumstances, impute the blame to their agent, and not to the applicant.

4. Companies wishing to do a straightforward and legitimate business cannot reasonably object to this rule, because it will make it to their interest to appoint competent and honest agents who will not mislead them or the public.

In this case, Stevens may purposely have omitted to state the incumbrance in the application, lest the risk should, in consequence, be rejected by the company, and he lose his commission; and the same motive would operate to induce him to deceive the applicant as respects the correctness of the application. Or the agent may have honestly supposed, in view of the amount of the incumbrance, the reputation of the assured, etc., that it was not worth while to mention it. In either case his fraud or his ignorance should fall upon the company, and not upon the assured, acting in good faith.

5. This view prevents palpable injustice.

The company received the plaintiff's money, paid as the price for the risk professed to be taken by it. This money the company still retains. For what did the company receive it? In consideration of insuring the plaintiff's property.

With respect to the incumbrance, it now sets up a defense which, if sound, makes the policy void from the beginning — a defense which shows that in fact it never assumed any risk or incurred any liability whatever. If the company and its agents were blameless, and this result had been brought about by the plaintiff's fault or fraud, it would be all right. Not so, however, if the plaintiff is without fault, and the only fault is shown to be in the agent of the company.

II. The defendant asked the court to charge, that, "if the agent had no authority other than to solicit, procure and forward applications subject to the approval or rejection of the company, as to issuing a policy of insurance, defendant is not bound by information given to such agent by plaintiff not reduced to writing, nor communicated by such agent to the defendant before the policy issued." This the court modified by a reference to the 11th and 13th instructions given for the plaintiff.

*3. —— power of special agent.*

So in relation to the powder, the defendant asked the court to charge, that, "if the plaintiff at any time during the policy, without the consent, in writing, of the defendant, had on deposit, or kept, or used, in the house insured, an explosive substance in amount capable, in case of explosion, to increase the hazard, defendant is released from liability." This was given as modified by the 11th and 13th of plaintiff's instructions.

The defendant also asked the court to charge, that, "if Stevens was only a special agent to solicit applications

and forward them to defendant to be approved or rejected by defendant, no parol contract between him and plaintiff could bind the defendant to let plaintiff use an explosive substance in the premises insured, unless such agreement was brought home to the knowledge of the defendant before the policy issued." This was given as modified by the 11th and 13th of plaintiff's instructions.

Other material instructions were expressly modified by the aforesaid 11th and 13th instructions.

This makes it necessary to quote these: —

The 11th given for plaintiff is as follows: "Where the agent is limited in his authority, but the agency is private, or not public, and not known to the insured, and the agent holds himself out as a general agent or purposely conceals his limited agency, and the company permits his acts and his conduct so to appear to others and the insured, so that the insured acts with the agent as if possessed of general powers, then the acts of the agent and notices to him, are the acts of the company, and the special or limited agency, not known to the plaintiff, is no defense."

The 13th instruction given for plaintiff is as follows: "A company is liable for the acts of a special agent outside of his strict powers, where a company knows of the exercise of them and does not object."

Now, the 11th and 13th instructions above, may, as abstract propositions, be correct. But in the case in which they were given they are erroneous, because, as we read the record, they were not warranted by the evidence.

Stevens is the agent referred to in these instructions. The notice referred to, is notice of the incumbrance. The acts referred to must, to be pertinent, be his alleged statement to the assured that he might keep one keg of powder. We see no evidence in the record that Stevens held himself out to the plaintiff as a general agent, or that

Bartholomew v. Merchants' Ins. Co.

he purposely concealed his limited agency; much less do we see any evidence, that the company permitted his acts and conduct so to appear to others and to the insured that the latter might properly act with the agent as if possessed of general powers.

On the contrary, Stevens did not, as it seems, claim to have power to issue policies, but simply received the application to be fowarded; and afterward, he delivered the policy to the plaintiff. The plaintiff nowhere swears that Stevens claimed to be a general agent — nowhere swears or proves that the company knew of his acts outside of his powers and did not object to them.

For these reasons the judgment of the District Court must be reversed.

We only add concerning the powers of Stevens, that they might, as respects the plaintiff, be greater than they were in fact; that his powers are to be measured by his general employment and the general nature of his duties, and not by the contract between him and his employer, or private instructions, whether written or printed, as to the manner of executing his agency.

It is not deemed necessary to examine more at large the questions made as to the powers of the agent, because, on the retrial, the evidence may not be the same, and because the views of the court on the general subject involved are given in other opinions filed at the present term.

III. It is due to the learned counsel who have twice argued this cause, that we should notice one other question urged by the counsel for the company.

3. —
estoppel.

The plaintiff sues at law on the policy.

Defendant answers, alleging that the plaintiff violated the fifth, sixth and eighth conditions of the policy. In the nature of a reply (for our statute, Revision section

2917, allows no formal reply, but puts in a reply for the party) the plaintiff relies upon matter which'he claims will estop the defendant to insist upon these defenses.

The company insists, that this matter of estoppel is not allowable to the plaintiff, who, as he sues upon the contract, alleging performance, must recover upon it as it stands.

Our view is this: the matters of the incumbrance and of the powder are defenses set up and to be proved by the company.

The section of the Revision just cited (§ 2917) allows the plaintiff to meet these defenses by "denial or *avoidance* as the case may require."

Without expressing any opinion upon the merits of the matters urged by the plaintiff by way of estoppel, it is our judgment that it is competent in this action for the plaintiff to avoid, if he can, by the way of estoppel, the defenses set up by the company. *Rowley* v. *The Empire Ins. Co.*, 36 N. Y. 550.

Reversed.