## Case No. 5,298.

### GEIB v. INTERNATIONAL INS. CO.

[1 Dill. 443;[1] 2 Chi. Leg. News, 325; 3 Amer. Law T. Rep. U. S. Cts. 143.]

Circuit Court, D. Minnesota. 1870.

EVIDENCE—FRAUDULENT OVERVALUATION—FRAUD—POWER OF AGENTS—WAIVER—ESTOPPEL.

1. If the plaintiff on the trial of an action on a policy of fire insurance, produces the policy, and shows the loss, the delivery of the preliminary proofs, and the value of the property destroyed by the fire, he makes out a prima facie case.

2. Fraudulent over-valuation of the property in the preliminary proofs held to be a "fraud" "or attempt at fraud," within the terms of the policy, and to defeat any right to recover thereunder.

[Cited in Shaw v. Scottish Com. Ins. Co., 1 Fed. 765.]

3. False statements by the assured in the application respecting the existence of a mortgage on the property insured, held to avoid the policy.

4. What acts and conduct on the part of the local agent of the company, who wrote out the application and issued the policy, will estop the company to set up the existence of the mortgage to defeat the action.

[Cited in Wilkinson v. Union Mut. Ins. Co., Case No. 17,676.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

5. Subsequent insurance by the assured in other companies in contravention of the terms of a policy will, if it so provides, avoid the same.

6. Certain circumstances held to amount in law to a waiver by the company of the condition of the policy respecting the amount allowed to be insured in other companies.

[Cited in Robinson v. St. Louis Mut. Life Ins. Co., Case No. 11,964.]

[Cited in Pelkington v. Nat. Ins. Co., 55 Mo. 173.]

[7. Cited in Wimer v. Smith (Or.) 30 Pac. 421, to the point that circumstances of mere suspicion will not warrant the conclusion of fraud.]

Action on insurance policy. The answer sets up three defences: 1. Fraudulent over-valuation of the property insured. 2. False statements respecting the existence of a mortgage on the insured property. 3. Over-insurance in contravention of the terms of the policy in suit. By the practice of the court, adopting the state practice, no replication was filed, but the answer is to be deemed controverted, and the plaintiff may meet the defence, either by a denial or by matter in avoidance.

The defendant's company was represented at the city of St. Paul by Messrs. Etheridge & Powell, who had the power to issue and cancel policies, and to change or consent to the change of the terms and conditions thereof. The application on which the policy in suit was issued, was filled up by the said local agents of the defendant, and was signed by the plaintiff, at the time the policy was delivered to him by the agents of the company. The plaintiff's testimony and that of the agent who acted for the company (Mr. Etheridge) was in conflict as to whether the agent at the time when the application was signed, asked the plaintiff the question, Whether there was any mortgage on the property, and as to whether the plaintiff answered it. The other facts relating to this point sufficiently appear in the opinion of the court.

The firm of Etheridge & Powell were not only the local agents of the defendant, but also of the Home Company which, through the said firm, issued a policy to the plaintiff, on the same property and at the same time the policy in suit was issued; and they were also the local agents of the Enterprise Company, and acting for it, soon afterwards issued the policy to the plaintiff which is now set up by the defendant as constituting an over-insurance, contrary to the terms of the policy in suit. The other facts in respect to this subject, are stated in the charge of the court.

Allis, Gilfillan & Williams, for plaintiff.
Messrs. Lampreys, for defendant.

Before NELSON, Circuit Justice, and DILLON, Circuit Judge.

DILLON, Circuit Judge (summing up to the jury). I. This is an action on an insurance policy issued by the defendant to the plaintiff, dated August 1, 1867, by the terms of

which the insurance company agreed to insure the plaintiff "on his two story frame building," in St. Paul, in the sum of $1,000 against loss or damage by fire for the period of one year.

On the trial the plaintiff has shown the policy; the loss of the property by fire on the 9th day of January, 1868; the proofs of loss as required by the policy, and has also offered evidence to show the value of the building insured.

Therefore the plaintiff is entitled to recover, unless the defendant has established by the fair weight of evidence, one or more of the three defences relied on to defeat the recovery.

To these defences the court will now direct your attention, and these you will consider separately and in their order.

II. The policy, which is the contract between the parties, contains this agreement on the part of the plaintiff, to wit: "Any fraud or attempt at fraud or false swearing by the assured shall make this policy void."

If you find from the evidence that the plaintiff in the proofs of loss knowingly and falsely made a fraudulent over-valuation of the property with a view to deceive the insurance company, and to induce them to pay more than the value of the building, then he cannot recover, and you will, if you so find the facts to be, return a verdict for the defendant.

If you decide this issue for the defendant this ends the case, and you need inquire no further. But if you determine this issue against the insurance company, then you will consider whether it has established its other defences or either of them.

III. The policy contains this condition, viz: "If any concealment or any erroneous representation, written or verbal, be made by the plaintiff concerning the risk," * * * "it shall make the policy null and void."

The application signed by the plaintiff and introduced in evidence contains this question, to wit: "What incumbrances, liens and mortgages are upon the property?" and said question appears on the face of the application to be answered, "None."

It is an admitted fact in the case that there was at the date of the policy, a subsisting mortgage on the property for the sum of $3,000.

This is a complete defence to the action, and defeats the plaintiff's right to recover, unless the plaintiff shows (and on this point the burden of the proof is on the plaintiff) that the company is estopped to make this defence, or has waived the necessity on the part of the plaintiff, to make a disclosure of the existence of the mortgage.

The plaintiff does not claim, and has not testified that he informed the defendant's agent of the existence of the mortgage, and the agent who issued the policy distinctly testifies that he was not informed of the existence of the mortgage, and did not have any knowledge of the fact at the time he issued the policy. Having signed a paper which stated that there was no mortgage on the property, the law devolves on the plaintiff the necessity to make clear and satisfactory proof that this paper is not binding upon him.

If you believe from the evidence that Etheridge, the agent, before the application was signed, asked the plaintiff the question, "whether there was any mortgage on the property," that the plaintiff understood the question, and answered "no," then (under the admitted facts of the case), the plaintiff's right to recover is defeated, and you will find a verdict for the defendant.

The plaintiff's name appearing to the application, he is concluded thereby, unless the same is not binding, because the agent of the company deceived the plaintiff as to the nature and character of the paper which the plaintiff signed, or caused the plaintiff to sign it in ignorance of its contents, and upon his assurance that it was all right.

The plaintiff's claim respecting the application and statement about mortgages is, that the facts are these, viz: That the agent of the company filled up the application in the absence of the plaintiff, and without his knowledge or authority; that the application together with the policy, was brought to the plaintiff by the agent; that the plaintiff is a German, and cannot read English print or writing; that it was not read by or to the plaintiff; that the agent assured the plaintiff that all was right; that plaintiff relied on this assurance; that plaintiff signed it without knowing or being apprised of its nature or contents, and supposing it was a receipt or paper obligating the plaintiff to pay the premium for which the agent had agreed to give a credit; that no inquiries were made by the agent of the plaintiff about incumbrances, and that the plaintiff did not purposely conceal or mislead the agent as to the mortgage, but was misled by the agent's acts or statements so that he did not know what he was signing: Now, if these facts are proved, the company is affected by the said acts and conduct of the agent, and the statements in the application in relation to the mortgage cannot be set up by the company to defeat a recovery on the policy.

The law presumes that the plaintiff understood the nature of the paper he signed, and does not presume that a fraud was practiced upon the plaintiff in respect to the application, and hence the facts relied on by the plaintiff to avoid the application and the statements therein contained as to mortgages, must be clearly and satisfactorily established by the plaintiff.

If you decide the preceding defences against the defendant, you will proceed to consider the next defence, viz: an over-insurance contrary to the terms of the policy.

III. The policy in suit is for $1,000, issued by the International Insurance Company, dated August 1, 1867. At the same time it is admitted that the plaintiff procured an insurance on the same building in the Home Insurance Company for $500.

In the policy in suit the plaintiff was allowed to make $500 additional insurance; and it also contains the following condition, viz: "If the assured shall have, during the continuance of this policy, any other contract of insurance on the property not consented to by this company, and indorsed on the policy, * * * the policy shall be null and void."

It is an undisputed fact in the case that on the 1st day of October, 1867, the plaintiff obtained, on the property in suit, in the Enterprise Insurance Company, of Cincinnati, a further insurance of $500. By this last-named policy, "$1,500 additional insurance was allowed" on the building, which was the amount insured by existing policies in the defendant's company (the International) and in the Home Company.

Thus the defendant had in all insured on the building $2,000. This is $500 in excess of the amount allowed by the policy sued on, and this avoids the policy and defeats the plaintiff's right to recover if the company has not waived, or is not estopped to make this defence.

It is an admitted fact that the policy in suit, also the Home policy issued at the same time, and also the Enterprise policy, were issued by the firm of Etheridge & Powell, local agents of these companies. It is also stated by Etheridge, as a witness on the stand, and not contradicted or disputed, that he was at the date of the policy in suit, and at the date of the Enterprise policy, and still is the local agent of the defendant, (the International Company), and that as such agent he has power to issue and to cancel policies and to change the terms and conditions thereof.

If, under these circumstances, you find the fact to be that the said Etheridge, or Etheridge & Powell, the local agents of the defendant, at the time they issued the Enterprise policy, knew of, and had in mind the policy in suit, and also the Home policy, and the conditions thereof as to the amount allowed therein to be insured by the plaintiff on the property, these circumstances will, in my opinion, amount in law to a waiver of the condition of the policy in suit as to over-insurance, at all events they will estop the defendant to make this defence of over-insurance. Viele v. Germania Ins. Co., 26 Iowa, 10; Rowley v. Empire Ins. Co., 36 N. Y. 550; Bartholomew v. Merchants' Ins. Co., 25 Iowa, 507.

It will be for the jury to say whether the words in the Enterprise Insurance Company's policy "$1,500 additional insurance allowed on the same building," had reference to the policy issued by the defendant for $1,000, and to the policy issued at the same time by the Home Company for $500—making the sum of $1,500. If these words referred to these policies, it is almost needless to observe to you that the agent who inserted them, both knew of and had in mind those policies and their conditions as to the amount the plaintiff was allowed to insure.

Foreign insurance companies are from necessity compelled to act by agents; those who do business with them must necessarily deal with agents; sound public policy, protection to the citizen, require that these companies be bound by the acts and conduct of their agents done within the scope of their apparent powers, when the assured knows of no limitations on such powers. As the local agent might by contract indorsed on the policy, have waived the condition as to amount to be insured, he may by acts and by course of dealing, do that which amounts to such a waiver—may dispense with this condition and with the requirement that such waiver or dispensation shall be in writing indorsed on the policy.

Do not, gentlemen, infer that the court intends any disparaging allusion to the defendant or the acts of its agents in this case. Indulge or entertain no prejudice against the defendant, because it is an insurance company or a foreign corporation. It has the same rights and should receive the same measure of justice as if a citizen of this state or one of your neighbors were the defendant. It would be a reproach to the law and to the trial by jury, if it should be true that the verdict depends not upon the law and the evidence, but upon the character of the parties.

[One question of fact which the jury will have to consider is, whether, in point of fact, the local agent (Mr. Etheridge) asked the plaintiff the question, "Are there any mortgages on the property?" If he did it was the duty of the plaintiff, if he understood the question, to answer it truly; and it was not necessary for the agent to state to him that a failure to answer truly, or that a mistake in answering it, would be fatal to the insurance; nor is it necessary that the agent should have communicated to the plaintiff or that the plaintiff should have understood the legal effect of a false or mistaken answer to the question about mortgages. On the point whether this question was put, the evidence is conflicting. The plaintiff testifies that it was not asked him at all, and that he did not answer it. The local agent testifies that he asked the question; that plaintiff answered it, and that he took down the answer at the time just as it appears on the application. Who is right in this and who is wrong, the jury must determine from the evidence and all the circumstances, including the nature of the answer "No" appearing on the application, and the reasonableness or otherwise of the explanation which the plaintiff has given as to what he supposed

the application to be. It is on the plaintiff to satisfy the jury that the question was not put to him and that he did not answer it; if the evidence fails to satisfy you of this, then the plaintiff has failed to show that the application and statements therein contained, are not binding upon him. The plaintiff's claim set up to avoid the application, and its binding effect on the plaintiff are referred to in the charge. If these facts are established then the plaintiff is not bound by the application. But if it is uncertain whether these facts are established. and you cannot find them to be true from the evidence, then it would be your duty to find that the application and its statements as to mortgages, are binding upon the plaintiff, and hence that he cannot recover in this action.] [2]

The jury found for the defendant upon the defence of the non-disclosure of the mortgage.

