BOETCHER v. THE HAWKEYE INSURANCE COMPANY.

1. **Insurance: EVIDENCE.** Parol evidence is admissible to show that the assured stated to the solicitor of the insurance company who received the application the fact that there was an incumbrance upon the property insured.

2. ———: NOTICE TO AGENT: SOLICITING AGENT. Notice to a soliciting agent, who is authorized to fill up applications for the assured, to receive premiums and forward the same with the application to the company, and whose agency thereupon ceases, is notice to the company.

3. ———: THE SOLICITOR THE AGENT OF THE COMPANY. A policy of insurance expressly stipulated that the soliciting agent who took the application was the agent of the assured; the latter was not advised of the fact at the time of the negotiation, when the application was signed and the premium paid; the policy further provided that the insurance might be terminated at the option of the company: *Held*, that the assured had the right to believe the soliciting agent was the agent of the company, and the insertion of the clause in the policy providing that he was the agent of the assured constituted a fraud upon the latter, of which the company could not take advantage.

*Appeal from Bremer Circuit Court.*

THURSDAY, DECEMBER 6.

ACTION in equity on a policy of insurance against fire on real and personal property. The premises were incumbered by mortgage, which was owned by Carl Schrœder, and he intervened, claiming the policy had been assigned to him, and that he was entitled to recover thereon to the extent of his interest. The pleadings were so framed as to properly present the questions discussed in the opinion. There was a finding

and judgment against the company, and it alone appeals.   The cause is triable *de novo*.

*W. E. Miller*, for appellant.

*Gray, Dougherty & Gibson* and *M. E. Billings & Co.*, for appellee.

SEEVERS, J.—The policy is dated December 30, 1874, and insured the plaintiff against loss by fire "from 27th of December, 1874, at 12 o'clock, noon, unto the 27th day of December, 1875, at 12 o'clock noon."   The loss occurred during the existence of the policy.   It does not appear on what day the application was made, but it asked for insurance "for one year from December 24, 1874."   The application was made to one Callender, a soliciting agent of the company.   In such application, which was signed by the plaintiff, he was asked: "Is any of the property encumbered?"   He answered, "None."   This was not true, as the property was then encumbered by mortgage.   Among other things, the application states that it contains a "full    *    *    statement    *    *    touching the risks, the condition, situation, description, title, exposure, location and value of the property,    *    *    *
and a warranty on the part of the assured," and the policy provides that the statements and obligations of the assured in the application shall be deemed warranties.   The policy also contains the following: "Any person acting as soliciting agent or surveyor in filling out or making the application on which this insurance is based is the agent of and acts for the insured named in this policy, and not of or for this company under any circumstances or in any manner whatever."

The president of the company testifies that Callender belonged to a class of agents "denominated 'solicitors'," who have power merely to solicit applications for insurance, receive premiums thereon, and forward the same to the company.   Upon these applications the company approves or rejects the risk. If it approves the risk a policy is issued by the company to the applicant, and sent to him by mail    *    *    *.   If

the company reject such risk it returns the application and premium to the applicant."

It is apparent from the letter of appointment and instruc- tion furnished this class of agents by the company that they are expected to fill up the blank applications with which they are furnished. Such, we are advised, is the universal practice. Callender did so in this instance.

The plaintiff claims that at the time he signed the applica- tion he fully informed Callender of the mortgage, in response to questions asked him, but for some reason what he informed Callender was not written in the application, as he at the time supposed and believed. This is denied by Callender, but the preponderance of the evidence is with the plaintiff. There is some question made as to the amount plaintiff is entitled to recover, if he does so at all. This will be referred to hereafter, Having stated the facts, there remains for determination the questions of law presented by counsel.

I. Counsel for the company insist "that it is not compe- tent to give parol evidence to prove that the assured correctly stated the fact of an incumbrance on the property to the solicitor who took the application, and that such notice to such solicitor did not and cannot bind the ap- pellant unless brought home to it, of which fact there is no claim whatever." We understand the law to have been ruled otherwise in *Miller v. Mutual Benefit Life Ins. Co.*, 31 Iowa, 216, and *Hingston v. Ætna Ins. Co.*, 42 Id., 46, and authorities cited.

II. It is claimed by counsel for appellant that "the author- ities are not in harmony upon the question as to the effect of notice to a soliciting agent of an insurance com- pany—where notice to the agent will be deemed notice to and binding upon the company. What counsel mean by "soliciting agent" is not defined. If he means that such agent has the power to fill up applications for the assured, to receive the premiums and forward the same, with the applica- tion, to the company, and thereupon his agency ceases, and under the facts in this case he must be taken to so mean, then, as we understand, this court is committed to the doctrine that

the company is bound by the knowledge or notice to such an agent. The cases heretofore cited so hold.

. III. That the plaintiff cannot recover unless his right to do so is saved by the fact he fully informed. Callender of the mortgage is practically conceded by his counsel, and without doubt such is the law. The important question, therefore, is whether Callender was the agent of the company or the assured at the time he was informed as to the mortgage. There is no pretense that any other person connected with the company, until after the loss, had any knowledge whatever on this subject The policy is the completed contract between the parties, and expressly declares that Callender was the agent of the assured. Is this decisive of the question?

*3. ——: the solicitor the agent of the company.*

The application was made and signed, without much doubt, on the 24th of December. It was forwarded with the premium to the company at Des Moines, more than one hundred miles from where it was made. The policy was issued on the 30th day of December, but took effect and was in force on and from the 24th of said month. *Hubbard et al. v. Hartford Ins. Co.*, 33 Iowa, 325. When written up and fully executed the policy was sent to the assured. At least it is so inferred, because such was the usual course of business, and nothing is shown to the contrary. It could not have been received by plaintiff until the day after it is dated. There was nothing in the application or in the intercourse between plaintiff and Callender which tended to show that plaintiff supposed or had reason to believe Callender was his agent, or that the company so regarded him. On the contrary, the plaintiff had the right to and no doubt did believe that Callender was the agent of the company. Conceding that plaintiff was bound to know the terms and conditions of the policy from the time he received it, there were some five days at least, during which the policy was in force and premium being earned, during which he had no knowledge that Callender without his consent had, by force of a contract which had been written up by the company, been his agent in a past transaction, which he had the right to believe was complete in itself. The plaintiff applied

for a policy of insurance, and he might well suppose a contract would be drawn up by the company to effectuate this purpose, but there was nothing from which it can be inferred that he supposed as a matter of fact any such provision would be inserted in the policy. Nor are we aware of any principle of law which requires or demands that plaintiff should be held to have had such knowledge. We are not advised whether or not the provision in question is usually contained in the policies of other companies. From adjudicated cases, however, we learn it is of comparatively modern origin.

The plaintiff, however, accepted the policy before the loss occurred, and it may be said he then knew or was bound to know that Callender had been his agent from the time he signed the application, and that he then should have repudiated the policy, or Callender from that time must be regarded as his agent from the beginning, or at least from the time when the policy was received. It must be remembered, however, the premium was in the hands of the company, and that no provision is made in the policy for its cancellation by the plaintiff, or rights reserved to him in this respect. The policy provides: "This insurance may at any time be terminated at the option of the company on giving notice to that effect * * * to the assured, * * * in which case a ratable portion of the premium for the unexpired term of the policy shall be a claim against the company, payable on the return of this policy to the company."

If the plaintiff had notified the company of what he could have justly claimed was a false statement in this respect in the policy, and the company thereupon saw proper to exercise the option vested in it and cancel the policy, the plaintiff could be required to pay the earned premium. He would thus suffer a direct pecuniary loss through no fault of his, but, on the contrary, through the wrong of the defendant. Under the facts in this case, the insertion of the clause in question was a fraud on the plaintiff, and no one should be permitted to take advantage of his own wrong or fraud. The policy had a legal existence, and for a time at least, as we have seen, the plaintiff could have recovered if a loss had occurred, notwithstanding

· the provision in question. The plaintiff did nothing to change or impair his rights.

We can readily see that the assured may be bound to take notice of the conditions and covenants in a policy that affect his rights, or that apply to matters in existence at the time the policy is delivered, or that may occur in the future, but we know of no principle of law which requires him to diligently examine the policy for the purpose of ascertaining whether it contains false statements of fact as to a past transaction which he might well suppose was closed.

If the application, payment of the premium, issuance and delivery of the policy are all consummated at the same time, or are all different parts of the same transaction, we conceive the assured should be bound by whatever statements and obligations are contained in the policy. And this may be true if it appeared he in fact knew the policy contained such a statement as the one in question.

Counsel have not cited any adjudicated case which sustains the foregoing views, nor has our own limited search enabled us to find any. With equal propriety it can be said none of the cases cited by counsel for the defendant militate against the views herein advanced. The ruling in *Chase v. Hamilton Ins. Co.*, 20 N. Y., 53, is based on the thought that parol evidence of what was said to the agent was inadmissible, because it tended to contradict the application and policy. This case must be regarded as overruled as to this point by *Rowley v. Empire Ins. Co.*, 36 N. Y., 550, which we do not regard as having been overruled or shaken, notwithstanding what is said · in *Owen v. Holland Purchase Ins. Co.*, 56 N. Y., 565, and *Roherbach v. Germania Ins. Co.*, 62 N. Y., 47. In *Jenkins v. Quincy Fire Ins. Co.*, 7 Gray, 370, the ruling is placed on the same ground as in *Chase v. Hamilton Ins. Co.*, and the same may be said of several other Massachusetts cases. To the same effect is *Loehner v. Home Mutual Ins. Co.*, 17 Mo., 246. The rule announced in these cases has not been followed in this State, but the contrary doctrine adopted. *Roherbach v. Germania Ins. Co.*, before cited, is more nearly like the one at bar than any to which our attention has been called. In

that case the agent had power to receive premiums, fill up applications and write up and deliver policies binding upon the company. The making the application, payment of the premiums and delivery of the policy were all parts of the same transaction. The policy contained a provision substantially like the one in question. The plaintiff sought to prove the agent had knowledge of matters material to the plaintiff's right to recover and which he should have mentioned in the application. It was held the evidence was inadmissible. The essential difference between the two cases is that no period of time intervened between the signing of the application and delivery of the policy, and the plaintiff could have fully protected himself by refusing to pay the premium or accepting the policy. He was bound as a matter of law to know what was contained in such policy.

IV. The only remaining question relates to the amount of the recovery. The court found the personal property destroyed, covered by the policy, to be of the value of $487.80. We are not disposed to disturb this finding. Under the terms of the policy the plaintiff can only recover three-fourths of the above, or $365.85, and this was the conclusion of the court below. The value of the building was found to be $458.69. In our opinion the preponderance of the evidence is that the building was worth $550, and we so find. The policy provides: "And in case any of the property covered by this policy shall have any liens or incumbrances thereon, either by mortgage or otherwise, the company will not insure or pay in any event to exceed two-thirds of the amount of the interest of the assured in such property, and such interest is declared to be the difference between the actual cash value of such property and the aggregate amount of such liens and incumbrances—principal and interest." If the amount of the mortgage had been stated in the application, the amount of the recovery would have been controlled by the foregoing provision. The company should not be prejudiced by reason of the failure in this respect.

From the record before us we are unable to determine the amount of interest due on the mortgage at the time the policy

was executed, when the loss occurred, or at the trial. The rate of interest is not stated, or from what time it should be computed, or when the $150 was paid. The amount due on the mortgage is therefore fixed at $400, as between defendant and the assured. The plaintiff is entitled to recover only two-thirds of $150, or $100, on account of the building. The whole amount of his recovery will therefore be $465.85, with interest from October 15, 1875, being sixty days after proofs of loss were furnished. The decree below must be modified in accordance with this opinion, and a decree may be entered in this court at the option of either party hereto, or remanded to the court below and a decree entered there. Such decree must contain proper orders for the protection of the intervenor, Carl Shroeder; and as between him and the plaintiff the amount due on the mortgage is fixed at the amount found due at the trial in the court below, as neither of them have appealed from the decree. The plaintiff must pay the costs of this appeal.

MODIFIED AND AFFIRMED.

### ON REHEARING.

BECK, J.—A rehearing was granted in this case upon the petition of defendant, and the cause has again been submitted for our consideration.

The defendant, in the petition for rehearing, bases an objection to our former opinion upon the ground that, as counsel claim, it is mistakenly stated therein the premium was paid by plaintiff upon signing the application for insurance, and when the policy was received by plaintiff the company held the premium. It is true that the *money* had not been paid by plaintiff, but the company received from him when the application was made a promissory note for the amount of the premium. The policy, by express words, recognizes this note as the consideration of the contract. We cannot think plaintiff's rights, in view of this fact, were any other or different than they would have been had the money been paid, instead of a note executed for the premium. The policy provides that in case the note is not paid at maturity the policy, from that time,

Boetcher v. The Hawkeye Insurance Co.

shall not be binding on defendant. But as it does not appear plaintiff made default upon this note, it cannot be claimed that the policy was not just as binding on both parties as though the money had been paid.

It is said that the plaintiff could have refused to accept the policy, and the note could not, in that case, have been collected. That may be so; but it cannot be doubted that defendant actually insured plaintiff's property from the 24th day of December until the policy was received, about a week afterward, and would have been entitled to the premiums earned during that time, if the policy had not been accepted by plaintiff. This would have been true if plaintiff had refused to accept the policy. The acceptance of this consideration by the company upon an agreement to insure the property from the 24th day of December and to issue a policy, would render defendant liable. Such an agreement is sufficiently shown by plaintiff's application and the acceptance of the consideration for such insurance to commence on the 24th day of December. Surely defendant, after accepting the consideration and issuing a policy purporting to insure plaintiff from that date, could not deny such contract.

We conclude that the statement of the foregoing opinion as to the payment of the premium is not such an error of fact as to affect the result, and that the position assumed therein, to the effect that there was a contract of insurance upon and before the receipt of the policy by plaintiff, is correct. We are satisfied with the conclusion of our first opinion, and adhere to it.

AFFIRMED.