DANIEL SULLIVAN v. THE PHENIX INSURANCE COMPANY OF BROOKLYN.

1. FRAUD, *Committed by Agent; Estoppel of Principal.* Where an agent of an insurance company acting within the general scope of the business intrusted to him, whose duty it is to fill up blank applications, deceives and misleads the assured, who is unable to read, by deliberately writing false answers in the application, and procuring the signature of the assured thereto, after he had given full and correct answers to the questions asked, the company receiving the premium, and for whom the agent was acting, will, in the case of a loss, be held responsible for the misrepresentations, and will be estopped from insisting on the breach of warranty and the untruth of the representations.

2. —— *Innocent Party, Not to Suffer.* If any party is to suffer by reason of the wrong-doing of such general agent, it should be the company who clothed him with authority, and for whom he was acting, rather than the assured who acted in good faith, and innocently became a party to the contract.

3. INSURANCE POLICY; *Ambiguous Provision, Invalid.* An insurance company cannot escape the responsibility of the mistake or fraud committed by an agent who is its trusted representative with authority to solicit insurance, fill up and forward applications therefor, and to complete and execute insurance contracts in its behalf, by an ambiguous provision obscurely printed in the policy that "it is a part of this contract that any person other than the assured who may have procured this insurance to be taken by this company, shall be deemed to be the agent of

the assured named in the policy, and not of this company under any circumstances whatever, or in any transactions relating to this insurance." Such a condition involves a legal contradiction, and is invalid.

4. VERDICT, *Ordered by Court—When Not.* Where a party fails to show something essential to the maintenance of the action or defense, and where there are no disputed facts for the jury to pass upon, the court may direct a verdict, but if the evidence fairly tends to establish the plaintiff's cause of action, the court cannot withdraw the case from the jury and direct a verdict in favor of the defendant, but must leave the weight and credit of the testimony with the jury.

5. ———— A motion to direct a verdict in favor of the defendant is substantially equivalent to a demurrer to the plaintiff's evidence.

*Error from Atchison District Court.*

ACTION by *Sullivan* against *The Phenix Insurance Company of Brooklyn,* to recover $600, with interest, upon a certain policy of insurance. Trial at the February Term, 1884. After the evidence on behalf of both parties had been submitted, the court directed the jury to find against the plaintiff; verdict and judgment accordingly. *Sullivan* brings the case here. The opinion states the material facts.

*W. W. Guthrie,* for plaintiff in error.

*Jackson & Royse,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: On December 23, 1881, the Phenix Insurance Company of Brooklyn issued a policy of insurance by which the plaintiff was insured against loss by fire for a term of three years on a dwelling house together with the furniture therein. The policy contained a stipulation that the written application of the assured should be considered a part of the policy, and a warranty upon his part that the property insured was in the condition he represented it to be, and that if there was any false representation made by the assured with regard to the condition of the property, or any omission to make known any and every fact material to the risk, it would operate to avoid the policy. Before the term of the policy had lapsed, and on March 22, 1883, the property insured was

mostly destroyed by fire. The company refused, upon application, to pay the loss, and the plaintiff accordingly brought this action. The grounds for refusal, as alleged in the answer of the insurance company, were, that in the application for insurance, signed by the plaintiff, it was represented that the house was provided with brick chimneys starting from its foundation; that there were two stoves in the house, and the pipes therefrom entered brick flues; and that no stove-pipes passed through the roof or side of the house. These representations were untrue, as it appears that one stove-pipe, instead of entering a brick flue, as stated in the application, passed directly through the roof of the house, where it is alleged that the fire which destroyed the house originated.

In reply to these allegations the plaintiff admitted the signing of the application, but stated that the application was written out by Robert Forbriger, the agent of the company, to whom the plaintiff had given a correct and truthful account of the condition of the building, including the fact that there was one brick-and-stone chimney in the house, and one stove-pipe, properly protected, which passed directly through the roof; and further, that he requested the agent of the company to view the premises before insuring them, which the agent declined to do; that the agent of the company then pronounced the statements made by the plaintiff to be entirely satisfactory, and informed him that the policy would be issued at once. After these statements were made the agent wrote up what he said was an application, in a manner unknown to the plaintiff, as he was unable to read it for himself; but believing that it contained, as the agent represented, the substance of the statements which he had made, he signed the same, and the policy was immediately delivered to him by the agent. He alleges that any and all conditions in the policy conflicting with such statements made to and accepted by said agent, were withheld from and not communicated to him; and further, that the fire originated at an entirely different part of the premises from where the stove-pipe passed through the roof.

The case was tried with a jury, and after the testimony on

behalf of both parties had been submitted, the court directed the jury to find against the plaintiff. The plaintiff brings the case here for review, and raises two questions, which he states as follows:

"*First:* Had the plaintiff the right to plead the fraud and misrepresentations in obtaining his signature to the application set up as a warranty?

"*Second:* If the plaintiff had the right to plead the fraud and misrepresentations, had the court the right to take from the consideration of the jury the duty of weighing the evidence upon controverted facts in relation to the statements and misrepresentations?"

The first question we think must be answered affirmatively. It is true the representations written in the application, and purported to have been made by the plaintiff, in regard to the flues, were untrue. They are doubtless to be regarded as material to the risk, and would, as provided in the contract of insurance, avoid the policy, unless the action of the company and its agent relieves the plaintiff from such a consequence. It is not denied that the answers in the application admitted to be untrue were wholly written out by the agent of the insurance company, nor that the plaintiff is an illiterate man, who was unable to and did not read the application to which his name was attached. The agent Forbriger, who filled up the application, was invested with authority as the general agent of the insurance company at Atchison, to solicit and transact its business at that place. He had been provided with blank applications by the company, upon which were printed instructions directing the agent to fill them up in a certain manner. Now the claim and theory of the plaintiff is that no misrepresentations were made by him, and that the false answers were purposely written out by the agent of the company without any authority from or knowledge by the plaintiff, and this after he had truthfully answered every question propounded to him. If this theory is sustained by the testimony, the insurance company would be estopped from insisting on the defense of a breach of the warranty, and the plaintiff would be entitled to recover. Assuming the existence

of the facts alleged by the plaintiff, it cannot be said that there has been a breach of the warranty as claimed by the insurance company, because no such warranty was actually made by the plaintiff. That which purported to be a warranty was the unauthorized and wrongful act of the defendant's agent, and had never been sanctioned or agreed to by the plaintiff. The action of the agent in such a case would be a wrong upon both parties, but if any party is to suffer by reason of the wrong-doing of the agent, it should be the company which clothed him with authority and for which he was acting, rather than the assured, who acted in good faith and innocently became a party to the contract. The view taken is sustained by the authorities, the current of which is to the effect that where an agent of an insurance company, acting within the general scope of the business intrusted to him, whose duty it is to fill up blank applications, deceives and misleads the assured by deliberately writing false answers in the application and procuring it to be signed by the assured, when the assured had given full and correct answers to the questions asked, the company receiving the premium, and for which the agent was acting, will, in case of a loss, be held responsible for the misrepresentations, and will be estopped from insisting on the breach of the warranty, and the untruth of the representations. (*Union Ins. Co. v. McGookey*, 33 Ohio St. 555; *Planters Ins. Co. v. Myers*, 55 Miss. 479; *Bartholcmew v. Merchants Ins. Co.*, 25 Iowa, 507; *Sprague v. Holland Purchase Ins. Co.*, 69 N. Y. 128; *American Ins. Co. v. Luttrell*, 89 Ill. 314; *Techner v. Phœnix Ins. Co.*, 65 N. Y. 195; *Ins. Co. v. Wilkinson*, 13 Wall. 222; *Germania Fire Ins. Co. v. McKee*, 94 Ill. 494; *Andes Ins. Co. v. Fish*, 71 id. 620; *Atlantic Ins. Co. v. Wright*, 22 id. 473; *Malleable Iron Works v. Phœnix Ins. Co.*, 25 Conn. 465; *Eilenberger v. Protective Mutual Fire Ins. Co.*, 89 Pa. St. 464; *Protective Ins. Co. v. Harmer*, 2 Ohio St. 452; *Boetcher v. Hawkeye Ins. Co.*, 47 Iowa, 253; *Geib v. Ins. Co.*, 1 Dill. 443; *Ins. Co. v. Mahone*, 21 Wall. 152; *Ayres v. Hartford Fire Ins. Co.*, 17 Iowa, 176; *Am. Cent. Ins. Co. v.*

*2. Innocent party, not to suffer.*

*1. Fraud by agent; estoppel of principal.*

*McLanathan,* 11 Kas. 533; Hine and Nichols's Digest of Insurance Decisions, pp. 39, 40, and authorities there cited.)

To avoid the estoppel, it is claimed by the insurance company that Forbriger was the agent of the insured in the procurement of the policy. The ground of this claim is an ambiguous provision, obscurely printed in the policy, which reads as follows:

"It is a part of this contract that any person other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in the policy, and not of this company under any circumstances whatever, or in any transactions relating to this insurance."

Reading the whole contract together, it would seem that this condition must have reference to persons other than the regularly constituted agent of the company; otherwise, the provision is a contradiction of other portions of the contract, wherein it appears that Forbriger was the duly-authorized agent of the insurance company at Atchison. He was its trusted representative at that place, not only for the purpose of soliciting insurance and forwarding applications therefor, but he was furnished the necessary blanks and printed documents for the transaction of its business, and also the policies of the company already signed by its president and secretary, with authority to complete them as contracts between the company and its patrons. In the policy it was specifically stated that it should "not be binding until it was countersigned by Robert Forbriger, agent for the company at Atchison, Kansas." He cannot occupy the antagonistic position of being agent for both the parties. And under the admitted facts, we must hold him to be the agent of the defendant. By this singular condition the company would shirk all responsibility for any mistake or fraud committed by its agent during the preliminary negotiations in its behalf, by stipulating that he is the agent of the assured. Such a condition involves a legal contradiction, and is invalid.

3. Insurance policy; ambiguous provision, invalid.

In *Planters Ins. Co. v. Myers*, 55 Miss. 479, the policy sued on contained a like provision, and the court there held that—

"Such stipulation cannot convert the agent who procured the application, and made the contract of insurance on behalf of the company, into an agent of the assured, such company being authorized by its charter to appoint agents and define their duties, and the agent in question being charged with the duty of soliciting and taking applications for policies, collecting premiums, etc. It is not destructive of the power of the agent, but an attempt of the company to dissolve the relationship between the company and the agent, and to establish it between the latter and the assured. Even if such agent could, by stipulation, be converted into an agent for the assured, he would still be the agent of the company, for in that capacity he professed to deal with the assured, and he was competent to bind his principal within the legitimate range of his employment."

In *Eilenberger v. Protective Mutual Fire Ins. Co.*, 89 Pa. St. 464, the supreme court of Pennsylvania, referring to a similar condition in a contested policy, held that as to all preliminary negotiations, the agent acts only on behalf of the company, and that the company cannot escape the consequences of fraud or mistakes of its agent by inserting a stipulation in the policy that such agent shall be deemed the agent of the assured, who, at the time of applying for the policy, was ignorant of the insurer's intention to so stipulate.

In *Gans v. St. Paul Fire and Marine Insurance Co.*, 43 Wis. 108, it was held that where an agent is authorized by the insurance company to receive applications and issue its policies, the company could not, by a stipulation in the policy, substitute the assured for itself, as the principal of the agent; and the court in commenting on the question, remarked that—

"If the stipulation substitutes the assured for the company, as the principal of the agent, then it is competent for a person to make a contract with his own agent which shall bind a third party who is a stranger to it, and who never agreed to be bound by it. This would be a manifest absurdity." (See also *Sprague v. Holland Purchase Ins. Co.*, 69 N. Y. 128; *Columbia Ins. Co. v. Cooper*, 14 Wright, 331; *Boetcher v. Hawkeye Ins. Co.*, 47 Iowa, 253.)

Upon the other question raised by the plaintiff, we are of the opinion that the action of the court in withdrawing the case from the jury was error. There are cases where the court may and should instruct the jury in absolute form and direct a verdict in favor of one of the parties. This may be done where a party fails to show something essential to the maintenance of the action or defense, and also where there are no disputed facts for the jury to pass upon. Some of the courts have gone to the extent contended for by the defendant, and held that the court might direct a verdict in any case where a contrary verdict would be set aside as against the weight of the evidence. To this we cannot agree; neither is it in accord with the decisions of this court, where it has been held in effect that if the evidence fairly tends to establish the plaintiff's cause of action or the defense of the defendant, the court cannot withdraw the case from the jury or direct a verdict, but must leave the weight and credit of the testimony with the jury. A motion to direct a verdict in favor of the defendant is equivalent to a demurrer to the plaintiff's evidence, about which it has been said that—

*4. Verdict, ordered by court—when not.*

*5. Motion equivalent to demurrer.*

" It cannot, therefore, be used to deprive a party of his right to have questions of fact determined by a jury. It matters not, therefore, whether the testimony which a party offers to prove a fact be absolutely conclusive, or only very weak and of uncertain import; he has the right to have that testimony considered and its value and sufficiency determined by a jury. The court may sustain a demurrer to evidence only under the circumstances which will permit it, after all the evidence has been presented on both sides, to withdraw the consideration of the case from the jury and decide it itself." ( *K. P. Rly. Co. v. Couse,* 17 Kas. 571.)

In another case it is said that before a case can be withdrawn from a jury the court must be able to say that, "admitting all the evidence to be true that the plaintiff has introduced, and that none of the evidence conflicting therewith is true, the plaintiff has utterly failed to make out his case." ( *Brown, Admr., v. A. T. & S. F. Rld. Co.,* 31 Kas. 1;

12—34 KAS.

see also *Jansen v. City of Atchison*, 16 Kas. 358; *Waterson v. Rogers*, 21 id. 529; *St. Jos. & D. C. Rld. Co. v. Dryden*, 17 id. 278.)

In this case it is clear that the testimony, though it may be weak and unsatisfactory, when considered in connection with the testimony of the defendant, and though it might have fallen far short of satisfying the minds of the jury, to say the least, fairly tended to establish the theory of facts assumed by the plaintiff.

Viewed in the light most favorable to the plaintiff, with all the facts reasonably and legally inferable therefrom, the evidence offered upon the part of the plaintiff tended to show that the untruthful answers respecting the flues were wrongfully written by the agent of the defendant without the dictation or knowledge of the plaintiff after he had given truthful answers to the questions asked. In his testimony he says he was not asked of what material the chimneys were made, nor whether the stove-pipes passed through the roof; neither was he asked anything about how the flues were built through the roof; that the insurance contract was made in Forbriger's office, and that no papers were read to him at that time. Forbriger asked questions in regard to the house; and if there were good flues, and he told him that there were, but that the agent did not ask him whether the chimneys were made of brick, stone, or tin. He asked the agent how much the insurance would cost for three years, and when he was told he paid the amount asked, and then the agent began writing and asking him questions, which he answered correctly, when the agent said "All right; you are insured now;" that the agent never read or explained the application to him, and that the false answers written by the agent in the application were never given by him.

It is true the testimony of the plaintiff regarding the flues is not very satisfactory, and the jury, if it had been submitted to them with appropriate instructions, might have found in favor of the defendant as did the court; but when it is considered in connection with the admitted facts, it made a case

upon which the plaintiff is entitled to the judgment of the jury.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.