ALLEN *v.* MILWAUKEE MECHANICS' INSURANCE CO.

1. FIRE INSURANCE—FORFEITURE.

   .There is no impediment to agreements for forfeitures in fire-insurance policies, if the parties choose to make them.

2. FIRE INSURANCE—PROVISION FOR ANNUAL INVENTORY.

   Under a fire-insurance policy providing that it shall be void if the insured fail to take an inventory of stock at least once a year, the insured is entitled to a reasonable time after the issuance of the policy within which to make an inventory, if there is none in existence which satisfies the requirements of the policy.

3. FIRE INSURANCE—FAILURE TO RENDER PROOFS OF LOSS—FORFEITURE OF POLICY.

   Where a fire-insurance policy provides that proofs of loss shall be furnished within 60 days after a fire, that the loss shall not become payable until 60 days after such proofs have been received, and that no action shall be sustainable *until after* compliance by the insured with the requirements of the policy, nor unless commenced within 12 months after the fire, the insured has at least 10 months within which to make his proofs of loss (*Steele* v. *Insurance Co.*, 93 Mich. 81); but where he brings an action and permits the year to expire without furnishing such proofs, and the provision has not been waived by the insurer, there can be no recovery.

4. SAME—ESTOPPEL OF COMPANY.

   Shortly after a loss under a fire-insurance policy, an adjuster of the company told the insured that everything was satisfactory as to the household furniture covered thereby, a list of which he had made at her dictation, but that he wanted her to obtain the bills of her store goods, after which, upon notification, he would meet her and make a settlement. The policy provided that the company should not be held to have waived any provision thereof by any requirement or proceeding on its part relating to any examination therein provided for. *Held:*

   (1) That there was no waiver of the formal proofs of loss required by the terms of the policy.

   (2) That, at most, any waiver was conditioned upon the procuring of the bills, which the insured failed to do.

   (3) That, it further appearing that the insured was advised, several months before the expiration of the time within

which proofs of loss might be furnished, that the company
was insisting upon the stipulated proofs, and that no pre-
judice had resulted to her in the meantime, an estoppel
could not be predicated upon the conduct of the adjuster,
even though the insured could be said to have been misled
thereby

Error to St. Clair; Vance, **J.**  Submitted May 8, 1895.
Decided July 9, 1895.

*Assumpsit* by Mary Allen against the Milwaukee
Mechanics' Insurance Company on a fire-insurance policy.
From a judgment for plaintiff, defendant brings error.
Reversed.

*A. C. Blodgett (Atkinson & Wolcott,* of counsel), for ap-
pellant.

*E. C. Babcock,* for appellee.

HOOKER, J.  The defendant appeals from a judgment
upon a policy of insurance.  It seeks to avoid liability
upon the technical claims that an inventory of plaintiff's
goods was not kept outside of the burned building, or in
an iron safe, and that proofs of loss were not furnished
within the period stipulated in the policy.

Insurance contracts, like all others, are made by the
parties, and cannot be changed by the courts.  There is
no impediment to agreements for forfeitures, if the
parties choose to make them.  This contract of insurance
contains provisions which create a forfeiture if the
insured has failed to comply with its terms, unless she
can be relieved through the application of the doctrine of
estoppel.  She has consented to a provision that the
policy shall be void if she fails to take an inventory of
stock once a year, and to keep the last inventory in
an iron safe, or other secure place in a building other
than the one containing the property insured.  She has
consented to a similar provision in case she fails to fur-
nish proofs of loss of a stipulated character within 60

days after the fire, the policy providing that "no action * * * shall be sustainable * * * until after full compliance," etc., "nor unless commenced within 12 months next after the fire."

The contract contains the further provision that—

"No officer, agent, or other representative of this company shall have power to waive any condition or provision of this policy, except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto; and, as to such provisions and conditions, no officer, agent, or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached hereto."

Also, the following:

"This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal, or to any examination herein provided for; and the loss shall not become payable until 60 days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company."

It is admitted that no *satisfactory* proofs of loss have been received by the defendant, and that no written proofs of loss have been made and furnished by the plaintiff at any time. The action was brought about seven months after the fire. It is also admitted that she never took an inventory of stock after she bought the stock. Her policy was destroyed by the fire, which occurred soon after; her purchase being in February, the policy having been issued in April, for one year, and the fire having occurred July 19, 1892.

No question was raised over the validity of this provision relating to the inventory. The circuit judge instructed the jury that it was his construction of that clause, " that Mrs. Allen was not required between the time of issuing this policy on May 30th [*i. e.,* April 30th] and the time of the fire, on July 19th, to make any

inventory of this property, and that the failure to do it
does not defeat her right to recover on this policy, if she
is otherwise entitled to recover." It was admitted upon
the trial that this policy was a Michigan standard policy.
It was issued for one year. Under this provision, the
plaintiff should be allowed a reasonable time to make her
inventory, if she did not have one, which may be infer-
able from the statement that she took none after her
purchase in February, although she began one that she
did not finish. If she had an inventory taken when she
purchased, she should have cared for it as provided in
the policy, and in such case it would have been unneces-
sary to take another before the fire, as that would have
been a compliance with the terms of her policy. If the
testimony showed that she had an inventory, the judge
may not have erred in saying that it was unnecessary for
her to take another. If not, it should have been left to
the jury to say whether a reasonable time had elapsed,
if the court could not have determined that fact from the
undisputed evidence.

It being shown that the plaintiff had not complied
with the conditions of her policy by filing proofs of loss,
it remains to consider the question of estoppel. This
claim is based on negotiations with the defendant's
adjuster. She testified that he called upon her about a
week after the fire. She stated what household furniture
she lost, and he made a list until he said it was enough to
cover the loss (*i. e.*, $200), and that she need not give him
more, and that as to the household furniture everything
was satisfactory; that he wanted her to get bills, as far as
possible, of her store goods; that she said she would as
far as she could, but expected difficulty, as she usually
paid cash. She testified, further, that he told her that,
as soon as she notified him about getting things ready,
he would meet her at Port Huron. She was to notify
the local agents, and they him, and he would meet
her at Port Huron and make a settlement. She did so,

and they put her off from week to week, saying they expected the adjuster there every day to settle it. She went to all who sold her goods, and they told her that, as she always paid cash for goods, they could not furnish bills; and she made a list of the goods in the store at the time of the fire, as near as she could remember, and took it to the local agents, and said she had her bills as far as she could get them, and what bills she didn't have she had proof for of the wholesale men where she bought them, and they told her that was all right, they expected the adjuster every day, and to keep the list until he came. She also caused one Atkins, of Port Huron, to write the adjuster or the company, and he received a reply from the adjuster, dated August 8, 1892, stating that he would adjust Mrs. Allen's loss as soon as she was ready to substantiate her claim in conformity with the conditions of her policy, and as soon as he should be informed to that effect he would go to Port Huron to give the matter his attention. One Jacob Stanzel testified that he was present at the interview with the adjuster at her request; that the adjuster made a list of furniture, and said she need not give any more,—that it was enough to cover the loss,—that was all right; and that he afterwards said she would have to get bills of the goods as soon as she could, and she was to send or take the bills to the local agents, and they would write him, and he would send back word when they would come and settle. He also testified to the talk between her and the local agents. He said: "I heard them tell her that they had not heard from the adjuster, but they expected to hear every day or two, and they would write her just as soon as they heard, and she was to come down and settle the loss."

It is unnecessary to refer to the contradictory testimony offered by the defense. We find it unnecessary to discuss the question of the adjuster's authority to waive the proofs of loss, because this testimony fails to show

a waiver, if his authority were conceded.  He left Mrs. Allen with the statement that she had better get those bills, and then he would see her again.  He might have insisted on his proofs of loss then and there; but, whether he did or not, he might legitimately make other investigations, especially when it was developed that she had no inventory, or other means, beyond her mere recollection, of giving him evidence of the quantity and value of the goods destroyed.  It may be that he was willing to consider and submit to his company the propriety of paying the loss, notwithstanding her failure to properly care for an inventory, without trying the question whether her failure to make the inventory at once or to file an existing one was a breach of the contract.  Whatever his motive was, it does not import an intention to give her to understand that she need not make proofs of loss, and bind his company to accept any list that she might prepare.  At the furthest, it was conditioned upon her getting bills, which she says that she did not get.  Furthermore, under the decision in the case of *Steele* v. *Insurance Co.*, 93 Mich. 81, she had at least ten months within which to make her proofs of loss.  Within less than four weeks after the fire, the letter to Atkins, which was given to her, apprised her that this company was insisting upon proofs of loss, and she became sufficiently convinced of it to bring an action several months before the time within which she might furnish them expired.  She was not misled for any length of time, if it can be said that the adjuster misled her, nor was she misled to her injury.  She lost no right, was put in no worse position, suffered no injury, by reason of his promise to see her again when she obtained the bills.  The alleged estoppel in this case must be tested by the rules applicable to estoppel, and we find the case wanting in its essential elements.

It is unnecessary to discuss the case further.  Inasmuch as she brought her action and allowed a year to

expire without furnishing any proofs of loss, there can be no recovery, and we have no alternative but to reverse the judgment. No new trial will be ordered.

The other Justices concurred.