[No. 6412.]

THE CONNECTICUT FIRE INSURANCE COMPANY v. COLORADO LEASING, MINING AND MILLING COMPANY.

1. Insurance—Fraudulent Concealment by Insured—Where no inquiry is made by the insurer, the intention of the insured in failing to fully disclose the condition of the property, or of the particulars of his title, is material, and to avoid the policy it must appear, not only that the matter not communicated was material, but that it was concealed intentionally, and with a fraudulent purpose.—(430, 431)

2. ———For the Jury—It is not for the court to say that facts alleged to have been concealed were material, and that the insured fraudulently and intentionally withheld them, unless the evidence is such that all reasonable men must draw this conclusion.—(431-433)

The evidence examined and held, that the question of the intent of the insured was properly left to the jury.—(434, 435)

3. ———Title of Insured—A vendee in possession of real estate, under an existing and valid contract of sale and purchase, is the "unconditional and sole owner, in fee simple," within the meaning of a policy of insurance which declares that unless otherwise provided, by agreement endorsed thereon, or added thereto, the policy shall be void if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple; and this is so, even though it should be deemed that the vendor had a lien for part of the purchase price. —(437-439)

4. ———Tax Sale Certificate—A tax sale certificate, outstanding in the hands of a stranger, no more impairs the title than would an unpaid tax. It is no violation of a condition requiring unconditional and sole ownership.—(437)

5. ———Construction of Policy—Clauses of doubtful meaning are construed in favor of the insured. The policy named sixteen

contingencies in which it should be void, and thirteen others in which the insurer should not be liable. There was a condition that in case of loss a certain statement should be rendered within sixty days thereafter. By another clause it was provided that no action should be sustainable, until full compliance with all requirements of the policy. The failure to furnish the statement within the stipulated period was not within any of these condemnatory clauses, and was nowhere declared to avoid the policy, or absolve the insurer. Held, that delay in furnishing the statement had the effect merely to postpone the day of payment, but not to bar an action on the policy.—(441, 442)

    6. Evidence—Competency—Admissibility—In an action upon a policy of insurance, an application made by the insured to another company, for insurance on the same property, is not admissible upon the question of the intent of the assured, in obtaining the policy sued upon, and an alleged concealment of facts material to the risk.—(440)

*Appeal from Fremont District Court*—Hon. MORTON S. BAILEY, Judge.

Mr. SYLVESTER G. WILLIAMS and Mr. CLYDE C. DAWSON for appellant.

Mr. JAMES T. LOCKE for appellee.

On the 27th day of May, 1904, the appellee Milling Company, hereinafter called the plaintiff, insured its reduction mill at Florence against loss by fire for a sum not exceeding sixty thousand dollars ($60,-000.00), represented by policies in several different companies. Sixteen thousand dollars ($16,000.00) of this was on the mill building; thirty-one thousand dollars ($31,000.00) on the machinery, tools and appliances of the mill; eight thousand dollars ($8,-000.00) on ore and mineral in the mill; two thousand dollars ($2,000.00) on supplies of every kind; two thousand dollars ($2,000.00) on the office and laboratory building, and one thousand dollars ($1,000.00) on the furniture of its office and assay department. The policy upon which this action was brought was issued by the local agent of the defendant insurance

company at Florence, and insured 1-24 of the property in an amount not exceeding twenty-five hundred dollars ($2,500.00.)

On the 4th day of March, 1905, the property insured was totally destroyed by fire. Upon a refusal of the defendant to pay its proportion of the insurance, this action was commenced, and a trial by a jury resulted in a verdict and judgment against the defendant in the sum of eighteen hundred and thirty-seven dollars and twenty-eight cents ($1,-837.28), from which judgment the defendant appealed.

Owing to the character and number of questions raised by the defendant, it is necessary to state the facts with some detail. The mill was built in the fall of 1897 or spring of 1898. Before its acquisition by the plaintiff, it had been idle, except for about forty days. The defendant claims that the enterprise failed. This is no doubt true, but apparently, from the evidence, the failure was due, not to the fact that the mill would not pay, if properly managed and operated, but to the fact that the owner did not have the money to pay for the mill or other expenses of its business. Actions for money judgments were brought against the owner, in aid of which attachments were levied on the mill, and finally sheriff's deeds were issued to one Tuthill, based upon judgments obtained in those actions. Afterwards, Tuthill died, leaving a widow, who, so far as the record shows, was his sole heir. She lived in Boston and was desirous of selling the mill. At that time, the plaintiff had a lease upon the Dexter mine in the Cripple Creek district, and also owned or leased the El Paso dump, and was desirous of obtaining the mill for use in the reduction of its ores.

On April 2, 1904, one Andrews, a real estate and insurance agent at Florence, at the request and on behalf of the plaintiff, obtained from Mrs. Tut-

hill, through her agent in Denver, a contract, whereby she sold the mill and ground upon which it stood to Andrews for $10,000, and agreed to convey it in fifteen days, free and clear of all liens and incumbrances, and Andrews agreed that within thirty days after the deed was presented and tendered he would pay the purchase price of $10,000, less $500 which he paid at the time he received the contract, and the contract recited that Andrews was to have possession of the mill. On April 4th, two days thereafter, Andrews assigned this contract to the plaintiff and received the $500 which he had paid on the purchase price, and the plaintiff agreed to pay the balance to Mrs. Tuthill. The plaintiff took possession of the mill, put it into condition for operation, started running it on the 29th or 30th of May and continued to operate it until the time of the fire in the following March. In August, or the early fall of 1904, the plaintiff lost its lease upon the Dexter mine, and thereafter continued operating with the ore from the El Paso dump. The plaintiff expended about $7,000 in improving the mill besides the necessary labor, and about half of this was done before the issuance of the policy in suit. On the 27th day of May, the date of the issuance of the policy, $5,000 had been paid on the purchase price of the mill. The final payment of the purchase price was made on July 6th. A deed from Mrs. Tuthill, running to Andrews, was then delivered, and on the same day, Andrews delivered a deed of the premises to the plaintiff.

Some time after the contract of purchase was obtained, the matter of insuring the mill was talked over, an amount of $60,000 was agreed upon and the matter was turned over to Andrews. He wrote a policy for $15,000 of the insurance in a company that he represented and gave the balance over to Mr. McCandless, another real estate and insurance

agent at Florence, who represented several companies, among whom was the defendant. There was no written application for the insurance and no inquiries or representations were made about the value of the mill or plaintiff's title to it. The purchase price of the mill was not disclosed. Mr. McCandless knew the mill from the time it was erected, but said he did not know anything about its value. He took it for granted that it was worth the amount of the insurance. Later he inspected the mill in company with another agent for another company. He examined the mill thoroughly for fire protection and was satisfied to continue the risk. Two or three days after the policies were issued and delivered, a blank application for one of the companies, other than the defendant, was handed to the plaintiff, filled out and signed by it and returned to Mr. McCandless. In this application, the answers, among other things, indicated that the property was not mortgaged or encumbered; that there never had been any legal or other difficulty about it; that it was a paying investment to the owners; that the prospects for future profitable use of the property were first-class, and that it would sell for $63,000. The policies provided that the amount of loss, in case of fire, should be determined by the insured and insurer, and if they could not agree, then by appraisers. On April 6th, 1905, after entering into a non-waiver agreement, the plaintiff and insurance companies compromised and adjusted the total loss at $38,809.15.

The plaintiff was an Arizona corporation with a capital stock of $75,000 divided into 750,000 shares of the par value of ten cents each, and was engaged in leasing and operating mining property. At the time it purchased the mill, its indebtedness was about $30,000. It had about 180,000 of its shares of stock for sale. This stock was disposed of at its par value. On June 20th, Andrews was given 10,000

shares for his services in purchasing the property. This is all he ever owned and he afterward became the manager under salary. At the time of the fire, the indebtedness of the company amounted to about $19,000, and there was in the mill about $2,100 worth of ore. The stock of the company was distributed among about 285 holders. The mill had paid a small profit. Such remaining facts as are necessary will appear in the opinion.

After stating the foregoing facts, Mr. JUSTICE MUSSER delivered the opinion of the court:

The defendant set up eleven separate defenses, each of which related to an alleged breach of some condition of the policy, which it is argued was sufficient to defeat the action. Numerous errors are assigned, most of which center about and are related to the first. The first assignment of error is that the court erred in refusing defendant's request to instruct the jury to return a verdict in its favor. The policy provided that it should be void if the insured had concealed any material fact or circumstance concerning the insurance or the subject thereof, or in case of any fraud by the insured touching any matter relating to the insurance or subject thereof, whether before or after a loss. Aside from an alleged fraudulent intent which the defendant says was concealed from it, and which will be noticed later, it is the contention of the defendant that the plaintiff concealed from it the fact that the plaintiff had purchased the property for $10,000 and had not paid the entire purchase price, and that the property had, for many years, been the subject of continuous litigation and controversy, and had been idle and thereby impaired in value, and that the title had become involved in great uncertainty and dispute. It is well to say here that there is no evidence that the title to the property had ever been involved in any

litigation or uncertainty. It is true that attachments issued in aid of actions for money demands, and that executions issued upon money judgments obtained against the owner were levied upon the property, and that it had been sold under these executions, and that sheriff's deeds had issued thereon; but this litigation did not relate to the title to the property. It was not litigation between rival claimants to the property, nor was the title uncertain. The attachments and executions were levied by creditors of the owner, and the sheriff's deeds merely transferred the undisputed and certain title of the owner to another, who obtained a title undisputed and involved in no uncertainty. It is true that the property had been idle, and may have been impaired in value thereby to some extent, but that fact was as well known to the agent of the defendant as it was to the plaintiff, for that agent lived in Florence, was engaged in a business that was bound to call his attention to the activity of the various industrial enterprises of the town, and he was acquainted with the mill from the time that it was built.

The defendant claims that, inasmuch as these matters, which it says were concealed, were material, the court should have instructed for it. The defendant loses sight of a very important fact in this case, and that is, that no inquiry was made of the plaintiff about the matters alleged to have been concealed, and that no written application was made for this insurance. "Concealment is the designed and intentional withholding of any fact, material to the risk, which the assured in honesty and good faith ought to communicate."—*Clark v. Ins. Co.,* 40 N. H. 333. So that a concealment involves, not only the materiality of the fact withheld and which ought to have been communicated, but also the design and intention of the insured in withholding it, and of

course the condition in the policy must be construed in the light of this definition of a concealment with which it is concerned. If an inquiry is made about a material fact and that fact is not disclosed upon such inquiry, it is very likely that the person questioned intended to withhold it; but if no inquiry is made, the intention to withhold the fact is not so plain. Hence, the authorities make a distinction between cases where inquiry is made and cases in which no inquiry is made. The rule is stated in Wood on Insurance, 388:

"When no inquiries are made, the intention of the assured becomes material, and to avoid the policy, they must find, not only that the matter was material, but also that it was intentionally and fraudulently concealed."

To the same effect are: *Alkan v. N. H. Ins. Co.*, 53 Wis. 136; *Van Kirk v. Citizens' Ins. Co.*, 79 Wis. 627; *Johnson v. Scott. Union and Nat'l Ins. Co.*, 93 Wis. 223; *Sanford v. Royal Ins. Co.*, 11 Wash. 653; *Lancashire Ins. Co. v. Monroe*, 101 Ky. 12; *Arthur v. Palatine Ins. Co.*, 35 Ore. 27; 2 Clement on Insurance, 3-4.

It is thus seen that in the circumstances of this case it is not alone the materiality of the facts which were withheld that was to be found, but also whether or not the plaintiff intentionally and fraudulently withheld them. The materiality of these facts was not fixed by any writing, as is often the case in insurance, but it must be drawn from circumstances. So also must the fraudulent intent of the insured be drawn. It is said in May on Insurance, vol. 1, sec. 195, that where the materiality is to be inferred from circumstances and not upon the construction of some writing, it is a question for the jury. How much more would the fraudulent intent of the insured in withholding these facts be for the jury? It was not for the court to say, as a matter of law, that the

facts alleged to have been concealed, were material and that the insured had intentionally and fraudulently withheld them, and hence no error was committed in refusing to instruct the jury to return a verdict for the defendant so far as such concealments were concerned. The defendant itself saw the propriety of such a ruling when it asked the court, in a number of instructions, to submit to the jury the question of the materiality of the facts alleged to have been concealed, and that if they found them material, to return a verdict for defendant. The defendant is not now consistent in urging this court to say that the lower court ought, as a matter of law, to have said that material facts were concealed, and, at the same time, urge this court to say that the lower court erred in refusing to give instructions submitting the question to the jury. The mistake which the defendant made in its request for such instructions was in asking the court to tell the jury that if the facts alleged to be concealed were material they should find for the defendant, omitting in each of the requested instructions the necessary element under the facts in the case that the jury must also find that the facts were intentionally and fraudulently concealed before they could find for the defendant. This answers a number of the assignments of error in this case relative to the refusal to give requested instructions. The jury was not wrongly instructed in this matter. If there was any failure to intruct thereon—though we do not say that there was—it was only non-direction.

Another ground upon which the defendant claims that a verdict should have been directed is that the insurance was taken out with a fraudulent purpose and speculative design, and not for the purpose of indemnity; that it was sought in an amount greatly in excess of the purchase price and value of the property, with the design of reaping great pe-

cuniary profit, in event of loss, and to give a fictitious value to the property and stock of the company, to aid it in the sale of its stock, and that thus a situation was fraudulently created 'by the plaintiff, whereby it would be more profitable to the plaintiff to obtain the insurance than to preserve the property, thereby greatly increasing the moral hazard of the risk without the knowledge of the defendant. This whole matter was submitted to the jury in a clear, full and complete instruction. The defendant admits that the instruction was a correct statement of the law, but insists that under the evidence it appeared so clearly that the insurance was taken out in bad faith by the plaintiff for the purposes of speculation and not for indemnity, with a fraudulent intent of reaping great profit in case of loss and of aiding it in the sale of its stock, that, as a matter of law, the court ought to have so declared and instructed the jury to return a verdict for defendant. The most liberal statement that can be drawn from the authorities to aid the defendant in this contention would be to say that it is only where the facts are such that all reasonable men must draw the same conclusion from them, that the drawing of the conclusion is ever considered as one of law for the court, and when a given state of facts is such that reasonable men may fairly differ in the conclusion to be drawn therefrom, the determination of the matter is for the jury; and even such a statement is qualified by some courts.—*Sullivan v. Phenix Ins. Co.,* 34 Kan. 177. Be that as it may, the conclusion which the defendant asks the court to draw, as a matter of law in this case, it to be drawn from a great number of circumstances appearing or claimed to appear from the evidence. If the evidence is rightly analyzed some of these circumstances alleged to exist are but conclusions themselves. No authority has

been cited, and it can be said with reasonable certainty that none can be found, where, in such a case as is now before this court, with all its facts and circumstances, it is said that the conclusion follows as a matter of law that the insurance, at its inception, was fraudulent on the part of the insured. The question whether the loss was brought about by the acts or procurement of the plaintiff—in other wards, whether or not the plaintiff deliberately caused the fire—was submitted to the jury in another instruction, and the jury found against the defendant on that. The main argument of the defendant for its contention seems to be the fact that the plaintiff purchased the mill for $10,000 and then sought and obtained insurance in a sum not exceeding $60,000. That fact was before the jury, together with all the other facts and circumstances of the case. At least $10,000, and probably $11,000, of the insurance was on personal property that was not purchased with the mill; that is, ores and supplies and possibly the furniture and appliances in the general office and assay office. Here was a completed mill, tested and found to be equal for the work required. After the purchase and before the insurance was taken out, about half of $7,000, besides the necessary labor, was put into it by way of improvements, and, before the fire, the whole of that sum was so expended. There is no testimony that the erection of the mill did not originally cost $60,000 or more. The plaintiff was engaged in mining and needed this mill for the reduction of its ores. It had ore to be reduced, and had reasonable expectations that it would continue to have ore. It was its business to mine ore. As a matter of fact, it did continue to obtain ore and run the mill to the time of the fire. There is no reasonable doubt that to the widow in Boston, not engaged in mining or milling, and to persons similarly situated, $10,000 was worth as much as the mill.

Can it be said from this fact that the mill, in the hands of an owner engaged in mining, who expected to be so engaged and who needed the mill in his business, was not worth the sum of $60,000 or more, especially when it is not made to appear that the construction of such a mill would not cost $60,000 or more? In a prospectus of the plaintiff, introduced by the defendant itself, for the purpose of showing that the plaintiff wanted the insurance for speculation and to aid it in a stock-jobbing scheme, it was represented that the mill consisted of a main building 70x162 feet, an engine house 28x74 feet and an assay office and refining department 36x36 feet and a scale house; that it was equipped with all the necessary machinery for crushing and reducing 150 tons of oxidized ore daily; that it was built of the best material, complete in every detail for the handling of such ore as the company had, and that it was built at a cost of $62,000. Not a word was said about the insurance. There is no evidence to show that these representations were not true in any particular. Must a court find, as a matter of law, that these representations were untrue merely because they were made? Nay, rather until the contrary is made to appear, the presumption is that they were true. In addition to all this, there was before the jury the circumstance that the policy itself was an open one; that is, it provided that the insured could only recover the actual cash value of the property at the time of its destruction by fire. The amount that the defendant would have to pay was not determined by the amount for which the policy was written. The defendant itself did not appear to attach much materiality to the value of the property, for it made no inquiry about it. No representations were made to it relative to the value at, or before, the issuance of the policy. Can it be said, as a matter of law, in such a case, that the insured ob-

tained insurance not exceeding $60,000 on $10,000 worth of property, with the intent of making great pecuniary gains therefrom, when all that could be recovered, in any event, was the actual cash value of the property, not exceeding the limit fixed, whether the value was $10,000 or $60,000?

Enough has been said to clearly show that a different conclusion can be reasonably drawn from the circumstances of this case than the one drawn by defendant, and to demonstrate that if the court below would have directed a verdict on the grounds urged by the defendant, that court would have committed error against the plaintiff; and it is equally clear that the lower court committed no error against the defendant when it submitted the question to the jury, under an instruction which was a correct statement of the law.

There was a condition of the policy that, unless otherwise provided by agreement endorsed thereon or added thereto, the policy should be void, if the interest of the insured be other than unconditional and sole ownership, or if the subject of the insurance be a building on ground not owned by the insured in fee simple. The defendant says that a verdict should have been directed in its favor, for the reason that no agreement was endorsed on or added to the policy, and the undisputed evidence is that the interest of the plaintiff in the premises insured was that of a vendee under a contract of purchase, and hence not a fee simple, and that there was a lien for the purchase price and an outstanding tax sale certificate against the property, which rendered plaintiff's ownership other than unconditional and sole. If this contract of purchase is examined, it is found that the vendor sold the land and mill thereon to the vendee, and that she agreed to convey it to the vendee, free and clear from all liens and incumbrances, within fifteen days, or sooner if practicable. The

vendee agreed that within thirty days after the presentation or tender of the deed to him, he would pay the balance of the purchase price. No reservation of any lien for the purchase money was made, nor was the conveyance dependent on the payment of the balance. The vendor had at most fifteen days from the date of the contract within which to convey the property to the vendee, clear and free from all liens and incumbrances, and the vendee had at least thirty days from that date to pay the balance. It is difficult to conceive how the vendor had a lien under such a contract. The facts with reference to the tax certificate were that it had issued, but it was transferred to the plaintiff. When the certificate was transferred to the plaintiff, it was no longer outstanding against the plaintiff. The defendant proved that the certificate was transferred to the plaintiff at or before the delivery of the deed on July 6th. Under this proof, the plaintiff may have been the holder of the certificate on May 27th, when the policy was issued. The defendant, after proving that the plaintiff may have been the holder, failed to prove that the plaintiff was not the holder when the policy was issued, and thus failed to prove that this tax certificate was outstanding against the plaintiff, at the time the insurance was effected. It, therefore, failed to prove facts sufficient to maintain its position with reference to this matter. It would have to, and did, allege facts in defense that would present the issue.— *Loyal Mut. Co. v. Brown Co.*, 47 Colo. 461 at 475. It is elementary that whatever must be pleaded must also be proven. For the purposes of this case, however, it may be assumed, as contended by the defendant, that the vendor had a lien upon the land for the balance of the purchase money, merely because the balance was unpaid, and it may be assumed that the tax certificate was outstanding in the hands of another party at the time of the issuance

of the policy. This contract of sale and purchase was at once assigned to the plaintiff by Andrews, and the plaintiff succeeded to all rights and liabilities thereunder. The relation of a vendor, with a lien for the purchase money, to the vendee in possession, is the same as that of a mortgagee to a mortgagor in possession.—*Loventhal v. Home Ins. Co.*, 112 Ala. 108. That case holds that a mortgage upon the land is not violative of such a condition in a policy, and refers to many cases supporting the position, quoting from *Dolliver v. St. Jos. Ins. Co.*, 128 Mass. 315, as furnishing a key to the rulings in all the cases referred to. Besides, as will be seen hereafter, there are many cases holding that a vendee in possession under such a contract of purchase is the unconditional and sole owner, notwithstanding that the purchase money has not been paid in full. The tax sale had not changed the interest of the owner. The certificate was at most a lien. The tax was a lien before the sale and before it became delinquent. The sale merely changed the form of the lien and transferred it from the state, county and municipality, or whoever held the lien, to the holder of the certificate. It might as well be said that if an owner takes out a policy with such a condition before he pays his taxes, whether delinquent or not, it will be void upon loss, because the property was encumbered with the lien of the taxes at the time the insurance was effected.

At the time the policy was issued, the plaintiff was the holder of the contract of purchase, in possession, using and improving the property and exercising all acts of full ownership. It had paid one-half or $5,000 of the purchase price. It was absolutely bound to pay the balance when due, though the mill burned down before that time. It was not in default. True, it did not have the legal title.

Its title was an equitable one, but it was an equitable title that contemplated and embraced full ownership. The estate owned may be in fee simple, though the title by which it is held be an equitable one. The plaintiff was the owner in fee simple by an equitable title. The vendor held the legal title in trust for the plaintiff. The plaintiff being in possession, the vendor could not convey this legal title to another, free from the trust impressed upon it. The condition in the policy does not distinguish between a legal and equitable estate in fee. The latter responds to the condition. The plaintiff was the unconditional and sole owner in fee simple within the meaning of the policy. These views are fully sustained by the following authorities, in many of which the purchase price had not been paid in full: *Loventhal v. Home Ins. Co.*, 112 Ala. 108; *Pa. F. Ins. Co. v. Hughes*, 108 Fed. 497; *Imp. F. Ins. Co. v. Dunham*, 117 Pa. St. 469; *Elliott v. The Ashland Mut. F. Ins. Co.*, 117 Pa. St. 548; *Lewis v. New England F. Ins. Co.*, 29 Fed. 496; *Dupreau v. Hib. Ins. Co.*, 76 Mich. 615; *Queen Ins. Co. v. May*, 35 S. W. (Tex. Civ. App.) 829.

The reasoning in *Baker v. State Ins. Co.*, 31 Ore. 41, is to the same effect, as is also that in *Pelton v. Westchester F. Ins. Co.*, 77 N. Y. 605.

The following authorities hold that such a vendee is the unconditional and sole owner of the property purchased within the meaning of a clause in an insurance policy requiring such ownership, and in some, if not in the most of these, the purchase price was not paid in full: *Milwaukee Mechanics Ins. Co. v. Rhea & Son*, 123 Fed. 9; *Phoenix Ins. Co. v. Kerr*, 129 Fed. 723; *Knop v. Ins. Co.*, 101 Mich. 359; *Chandler v. Com. F. Ins. Co.*, 88 Pa. St. 223; *Martin v. State Ins. Co.*, 44 N. J. L. 485; *Davis v. Pioneer*

*Fur. Co.,* 102 Wis. 394; *Matthews v. Cap. Ins. Co.,* 115 Wis. 272.

In the case last cited, the court, with reference to a vendee under a land contract, being the unconditional and sole owner, said:

"It does not seem that we are called upon to reconsider or discuss a matter so well settled as the law on the subject in question."

And in 123 Fed., *supra,* a case where a part of the purchase money remained unpaid, Judge Lurton said:

"That a vendee in possession under a written agreement for the sale and purchase of the property is the equitable owner thereof, and authorized to represent himself as the owner, or the 'sole and unconditional' owner, within the meaning of that term in fire policies, is hardly the subject of debate."

The nearest expression there is on the subject in this state is in *Wich v. Eq. F. & M. Ins. Co.,* 2 Col. App. 484. In effect, that case decides that such a vendee is the equitable owner invested with the entire, unconditional and sole ownership.

The defendant says the court erred in refusing to admit in evidence an application for insurance made by the plaintiff to a company other than the defendant, and delivered to McCandless several days after the policy in this case was issued. That the application was inadmissible, even if made to the defendant, when it does not appear that the making of the application was a condition precedent to the policy taking effect or that it was made under an agreement on the part of plaintiff to make one after the issuance of the policy, is settled by this court in *Loyal Mutual Co. v. Brown Co.,* 47 Colo. 467, and when made to an entirely different company than the defendant, there is much more reason for not admitting it. The defendant at no time before

or after the issuance of the policy asked for any representations from the plaintiff. The policy contained the following provisions:

"If fire occur, the insured—within sixty days after the fire, unless such time is extended in writing by this company—shall render a statement to this company, signed and sworn to by said insured, stating   *   *   *"

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

It also provided that the loss should not become payable until sixty days after notice, ascertainment, estimate and satisfactory proofs of loss required had been received by the company and that suit upon the policy must be commenced within twelve months after the fire. As a matter of fact, the required statement was sent after the expiration of the sixty days, and was ever after retained by the defendant without objection thereto, on any ground, until it filed its answer in this case. The question of waiver, however, will not be considered. It is not provided that there shall be a forfeiture or that the company will not be liable in case the statement is not rendered within sixty days after the fire. There are a number of clauses in the policy expressly beginning with the words "this entire policy shall be void," or "this company shall not be liable," and stating the particular instances in which the policy shall be void or the company not liable. At least sixteen contingencies are named in which the policy shall be void, and at least thirteen in which the company shall not be liable. The failure to furnish the statement within sixty days is not among these contingencies. The matter referring to the statement is in a different clause from any of those contingencies, and the

clause in which it occurs does not contain any words of non-liability or avoidance. If the policy was to be avoided or the company not liable in case of failure to furnish the statement in sixty days, why did not the policy so state, when it did so state in so many other contingencies? This court and many others have stated that in case of doubtful meaning a policy should be construed in favor of the insured. Forfeitures are not favored and courts do not declare one by implication. The policy does not expressly provide that the loss shall not be payable unless the statement is furnished within sixty days, but it does provide that the loss shall not become payable until sixty days after the statement or proofs of loss are received. In view of all the foregoing considerations, it must be held, in accordance with what seems to be the rule under the weight of recent authority, that the failure to furnish the statement within sixty days merely postponed the time of payment to the specified time after it was furnished and did not defeat recovery, the action having been commenced after sixty days after the statement was furnished and within twelve months after the fire.—*Ins. Co. v. Whitaker,* 112 Tenn. 151; *Indian, etc., Bank v. Hartford F. Ins. Co.,* 35 So. (Fla.) 228; *Steele v. German Ins. Co.,* 93 Mich. 81; *Mason v. St. Paul, etc., Ins. Co.,* 82 Minn. 336; *Flatley v. Phoenix Ins. Co.,* 95 Wis. 618; *Welch v. Fire Assn.,* 120 Wis. 456; *So. F. Ins. Co. v. Knight,* 111 Ga. 622; *Gerringer v. N. C. Home Ins. Co.,* 133 N. C. 407; *Rheims v. Stand. F. Ins. Co.,* 39 W. Va., 672; *Munson v. Ger. Ins. Co.,* 55 W. Va. 423; *Taber v. Royal Ins. Co.,* 124 Ala. 681; *Allen v. Mil. etc., Ins. Co.,* 106 Mich. 204; *Ins. Co. v. Owens,* 69 Kan. 602.

It is a fact that respectable authorities have announced a different rule. The weight of recent authority, however, supports the rule as announced.—

13 Am. & Eng. Ency. of Law (2nd ed.), 329; 4 Cooley Briefs on Ins., p. 3369; 1 Clement Fire Ins., p. 201, rule 9; 4 Joyce on Ins., sec. 3282.

There are other errors briefly referred to by defendant. It would not be profitable to discuss these. The main contentions have been answered, and finding no error, the judgment is affirmed.

*Affirmed.*

Chief Justice Campbell and Mr. Justice Gar-rigues concur.

Decided May 1, 1911; rehearing denied June 5, 1911.