P. F. COLLINS et al., Appellees, v. IOWA MANUFACTURERS IN-
SURANCE COMPANY, Appellant.

INSURANCE: Failure to Plead Avoidance.   A plea that an admit-
tedly false and material statement of fact in an application for
insurance avoided all liability on the policy may not be met by
evidence that the insured truthfully recited the facts to the
company's agent when the application was prepared, unless
such facts are pleaded by the insured, in the form of an avoid-
ance.

TRIAL: Effect of Improperly Received Testimony.   It is erroneous
to instruct as to the affirmative effect of improperly received
testimony.

INSURANCE: What Constitutes a "Concealment."   Naked failure
of an insured to inform the insurer of the existence of a ma-
terial fact is not, *per se*, a "*concealment*," within the meaning
of a policy which provides for nonliability in case of a *conceal-
ment*.   "Concealment" embraces the *intentional* withholding of
a material fact which the insured ought, in honesty, to com-
municate.

INSURANCE: Waiver of Erroneous Statement as to Ownership.   An
erroneous statement as to ownership of property becomes quite
immaterial when, subsequent to the issuance of the policy, the
insurer was fully apprised of the error, and failed to cancel
the policy.

INSURANCE: Pre-Existing Incumbrance on Property.   A provision
which nullifies the policy in case the insured property is or be-
comes incumbered by a lien which is "created by the voluntary
act of the insured, or within his control," is not violated by
liens which were created by the *prior* owners of the insured
property, and before the policy holder became a purchaser.

INSURANCE: Change in Interest by Judicial Proceedings.   The
foreclosure of a mortgage and sale thereunder do not, prior to
the issuance of the deed, work any change in the "interest,
title, possession, or use" of the insured property, within the
meaning of a policy which avoids liability in case such change
actually occurs.

INSURANCE: Additional Insurance by Execution Purchaser.   Pro-
visions against additional insurance *by the insured* are mani-

festly not violated by the act of the purchaser at foreclosure sale in taking out a policy to protect his interest.

**INSURANCE:** Deductions from Policy. The insurer may not complain that the court did not instruct the jury to deduct from the amount due on the owner's policy the amount of a policy held by a purchaser at execution sale, when the insurer asked no such instruction, prayed for no such relief, and did not show that said latter policy was collectible.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

OCTOBER .25, 1918.

THE plaintiffs had a verdict on a policy of insurance issued by the defendant, and defendants appeal.—*Reversed and remanded.*

*J. T. Sullivan* and *Henderson & Fribourg,* for appellant.

*D. H. Sullivan, Alfred Pizey,* and *McCormick & McCormick,* for appellees.

SALINGER, J.—I. One defense is that, in certain material matters, the application for insurance states misrepresentations. The plaintiffs were allowed to show, in the examination in chief of Mr. Collins,

1. INSURANCE: failure to plead avoidance.

that the agent of the defendant who effected the insurance was truthfully informed by Collins concerning said material facts connected with the situation of the insured property; and this was permitted over objection by defendant, which included that said testimony had no tendency to prove "any issue in this case." It is now urged upon us that, since the defendant pleaded the alleged misrepresentations in its answer, the testimony of Collins was pure matter in avoidance, and should not have been received over the objection made, since no pleading put said allegations of the answer in issue. It is the position of the appellees that no reply

was necessary, because "appellant's affirmative defense of fraud was denied by operation of law, and there was no need to plead estoppel or waiver, since everything necessary to plaintiff's case was already in the policy itself, or in defendant's answer." A quite extended independent investigation discloses that, strange as it may be, there is very little express authority upon the precise point. In many cases, the reception of such testimony as this has been permitted: but it was done either where the pleadings asserted an estoppel because the agent of the defendant was at fault in filling out the application contrary to the information received by him (*Stone v. Hawkeye Ins. Co.*, 68 Iowa 737; *Jamison v. State Ins. Co.*, 85 Iowa 229; *Carey v. Home Ins. Co.*, 97 Iowa 619; *Schaeffer v. Anchor Mut. F. Ins. Co.*, 113 Iowa 654; *Parno v. Iowa M. M. Ins. Co.*, 114 Iowa 132; and *Rogers v. Phoenix Ins. Co.*, 121 Ind. 570 [23 N. E. 498],— in the last two, the issue was made by reply); or it has been received in the absence of such plea, but the absence thereof was not considered. See *Donnelly v. Cedar Rapids Ins. Co.*, 70 Iowa 693; *Key v. Des Moines Ins. Co.*, 77 Iowa 174; *Reynolds v. Iowa & N. Ins. Co.*, 80 Iowa 563; *McComb v. Council Bluffs Ins. Co.*, 83 Iowa 247; *Boetcher v. Hawkeye Ins. Co.*, 47 Iowa 253, at 255; *Hingston v. Aetna Ins. Co.*, 42 Iowa 46; *Lamb v. Council Bluffs Ins. Co.*, 70 Iowa 238. While none of the foregoing decisions are authority on whether such testimony may or may not be received in the absence of a pleading raising the conduct of the agent as an estoppel, they strongly indicate that it is support of an estoppel, and *Kausel v. Minnesota F. M. F. Ins. Assn.*, 31 Minn. 17 (16 N. W. 430) [citing May on Insurance, Section 143, and *Insurance Co. v. Wilkinson*, 13 Wall. (U. S.) 222], *Fitchner v. Fidelity M. F. Ins. Co.*, 103 Iowa 276, and *Jordan v. State Ins. Co.*, 64 Iowa 216, at 218, expressly hold that such defense is an estoppel; and in the last-named case, all of the aforesaid cases, not directly so holding, perhaps,

are said to hold that the act of the agent creates an estoppel to deny the validity of the policy, and that his knowledge of the truth constituted a waiver. If that be so, it is self-evident that, on proper objection made, the testimony is not receivable without apt plea; and so to hold but reaffirms the elementary rule that an estoppel must be pleaded. Moreover, it would seem that, where the application as written contains a material misrepresentation, and that is made a defense by answer, an attempt to meet this by proof that the agent of the defendant was solely to blame for the existence of the misrepresentation, constitutes a defense in the nature of special defense or confession and avoidance, such as the statute demands a special plea for.

*Bartholomew v. Merchants' Ins. Co.*, 25 Iowa 507, seems to be the only case that appears to be dealing with the exact question before us. It is therein held that meeting the defense of misrepresentation in the application by showing that the agent was informed of the truth, is an avoidance by plaintiff, "by way of estoppel consisting of the acts of the company and its agents;" and *Rowley v. Empire Ins. Co.*, 36 N. Y. 550, is cited. The main case continues that the defendant must set up the misrepresentation and prove it, and that, thereupon, the statute allows the plaintiff to meet such defense by "denial or avoidance, as the case may require." In the case at bar, the denial by operation of law, upon which appellees rely, merely denies that the application contains anything that is not true. It stands admitted that it did. If this is to be met, it must be an avoidance, and not a denial—and no avoidance is pleaded. We are unable to agree with the contention of the appellee that 19 Cyc. 923, and 40 Cyc. 254, dispense with the necessity for such pleading. The utmost that this authority declares is that such estoppel may be pleaded by the plaintiff in the first instance; and it is further said the plaintiff cannot, either generally or specifically, allege per-

formance of the conditions of the contract and support
that allegation by such proof as this, unless he at least al-
leges waiver in reply to defendant's averments of nonper-
formance; and all we can find that can be strained into
even leaning to the theory of the appellee is the further
statement that, if facts are alleged as constituting a sub-
stantial performance, this allegation may be proved,
though the proof may, in some aspects, involve waiver. It
is true, Cyc. further points out that the doctrine of waiver
in insurance law was introduced for the purpose of defeat-
ing forfeiture. But we cannot see how that purpose
changes the rules of pleading, even assuming that waiver
and estoppel are the same thing. That the plaintiff may
use a waiver to avoid a forfeiture, does not prove he may
do so without pleading waiver. Moreover, while waiver
belongs to the family of estoppel, and the doctrine of es-
toppel lies at the foundation of the law of waiver, they
are, nevertheless, distinguishable terms, though the dis-
tinction is sometimes difficult. But a brief statement of
the essential distinction is that waiver may be the act of
one party, relinquishing some right of his, while estoppel
is based on the conduct of the other party, which has led
his adversary into a disadvantageous position, which he
would not have occupied, had it not been for such con-
duct. 40 Cyc. 255.

This testimony should not have been received, in the
state of the pleadings.

II. Instruction 5 is attacked because it told the jury
that, if a full and fair statement of the truth was made
to the agent, there was no concealment or misrepresenta-
tion, and that this was error, because
there was no evidence to support it, nor
pleadings that authorized it. There was
evidence. We have already held it was er-
roneously received. But the reversible error is *receiving*

2. TRIAL: effect
of improperly
received testi-
mony.

the testimony. With it in, the reversal must be for its reception, and not on the ground that such evidence did not exist and, therefore, the instruction had no evidence in its support. And the error in instructing as was done, in the state of the pleading, is the same error that we have already dealt with in passing upon the reception of what Collins said to the agent.

III. It is complained of Instruction 5 that, while the court did tell the jury that, on proof by the defendant of a material concealment or misrepresentation, the policy would be avoided, there was a failure to instruct the jury as to what was a material concealment or misrepresentation. An inspection of the instruction in question shows that the jury was told what would be such concealment or misrepresentation; for it is told that, if the plaintiffs concealed from the agent that the premises were mortgaged to the lumber company, or that a judgment and decree of foreclosure was had upon the mortgage, or that the lumber company had procured a policy of $1,000, these would constitute a material concealment or misrepresentation.

IV. Instruction 5 is further complained of for submitting to the jury whether defendant had proved by a preponderance that the premises were mortgaged, whether there was a foreclosure, and whether additional insurance was taken. It is undisputed that such mortgage and foreclosure existed, and that such insurance was taken; and if their existence *was* left to the jury, the point would be well taken. But the instruction does not so charge. What it submits to the jury is not whether these things existed, but whether Collins concealed their existence from the agent. The real contention on this head is that whether or not there was such concealment was a law question, and should not have been submitted to the jury. This argument is based on the claim that, as matter of law, it was a

3. INSURANCE: what constitutes a "concealment."

concealment if Collins did not advise the agent of the existence of the mortgage, the foreclosure, and the taking of the additional insurance. The claim is not tenable. The answer charges a fraudulent concealment. Under the rule contended for, a fraudulent concealment would be established by failure to state what was not known. We hold that the mere fact that these things were not stated, would be no evidence of concealment. The question is not what Collins stated, or failed to state, but what he concealed, and whether mere silence is the concealment with which the law of insurance avoids policies. We are inclined to the opinion that it is not that. Silence is not, of itself, concealment. *Runkle v. Hartford Ins. Co.*, 99 Iowa 414; *Barrett v. Lewiston, B. & B. St. R. Co.*, 110 Me. 24 (85 Atl. 306); *Connecticut Fire Ins. Co. v. Colorado L., M. & M. Co.*, 50 Colo. 424 (116 Pac. 154). It was said, in *Runkle v. Hartford Ins. Co.*, 99 Iowa 414, "There must be a willful intent to defraud, and not a mere mistake or oversight;" and in *Connecticut Fire Ins. Co. v. Colorado L., M. & M. Co.*, 50 Colo. 424 (116 Pac. 154), that:

" 'Concealment is the designed and intentional withholding of any fact material to the risk, which the assured in honesty and good faith ought to communicate.' So that a concealment involves not only the materiality of the fact withheld, and which ought to have been communicated, but also the design and intention of the insured in withholding it. * * * It was not for the court to say, as matter of law, * * * that the insured had intentionally and fraudulently withheld them."

It is true there is testimony that, long after the insurance had been effected, there was an admission by plaintiff Collins, and possibly his wife, that there was no mortgage such as the one held by the Bradford Lumber Company. But manifestly, that gives no support to the claim that the existence of the lumber company mortgage was

fraudulently concealed at the earlier time when the insurance was effected. Nor do we deem it material that, shortly after the insurance was effected, the husband requested issuance of a loss-payable clause to the Northwestern National Bank of Sioux City, on statement that its mortgage was $100, and no more, and that mortgage clause was accordingly made to said bank. This fact, too, does not prove an intentional concealment of the existence of a mortgage to the lumber company.

For reasons already stated, we attach no importance to the testimony of Collins that, while both he and the agent of the defendant were drunk, and almost so drunk as not to know what they were doing, Collins, in effect, told the agent that there was a mortgage to the lumber company, and that he wanted the policy fixed accordingly.

While the existence of the mortgages and of the foreclosure and of the taking of additional insurance may, in a proper case, avoid a policy, this does not establish it was error to submit to this jury whether the existence and doing of these things had been fraudulently concealed.

V. Instruction 5½ defines "conceal" or "concealment" to mean the intentional withholding of any fact material to the risk, which the assured, in honesty and good faith, ought to communicate. It is excepted to on the ground that it was misleading, because the facts were not in dispute, and that, therefore, the question of whether there had been a concealment was one of law for the court, and should not have been submitted to the jury at all. It is further urged against the instruction that it is an improper definition, and that the jury, assuming the question was for them, should, instead, have been told that concealment was the suppression of any material fact within the knowledge of the plaintiff that defendant was not presumed to know, and had no means of knowing.

We can see no substantial difference between an in-

struction that concealment means the intentional withhold-
ing of any fact material to the risk which the assured, in
honesty and good faith, ought to communicate, and one that
concealment means the suppression of some fact within the
knowledge of plaintiff which defendant is not presumed to
know, and had no means of knowing. If anything, the in-
struction given was more favorable to the defendant than
the one it says should have been substituted.

VI. Defendant asked directed verdict because, *inter
alia,* neither of the plaintiffs was the absolute and unquali-
fied owner of the insured property.

We have no occasion to pass upon the question whether,
when P. F. Collins, the husband, effected the insurance,
with statement that he was the owner of the insured prop-
erty, he had or had not an insurable in-
terest because part of the property insured
is a homestead. We may grant, for the sake
of argument, that he had no such interest.
But, shortly after the insurance was effected, he notified
the defendant that the property insured was that of Delia
Collins—and this is the fact. It is the position of appellant
that, if P. F. Collins was not the owner of the property
when he effected insurance upon it, and falsely represented
that he was, this made the policy issued literally void; and
that, being thus void, nothing could validate it. We hold
that the alleged representation of ownership did not make
the policy void, but voidable; and that, when thereafter
the insurer was informed of the true owner, and took no
steps to cancel the policy, it became a valid policy, insuring
the property of the true owner.

We shall soon come to deal with the fact that, when the
insurance was effected, a mortgage lien upon the insured
property had been foreclosed, and said property sold by
sheriff's sale. Whatever the effect of that may be, it did not
change that Delia is the sole owner of the property. *Green-*

4. INSURANCE:
waiver of er-
roneous state-
ment as to
ownership.

*lee v. North B. & M. Ins. Co.*, 102 Iowa 427; 19 Cyc. 694.

VII. The policy is to be void if the subject of insurance or a part thereof be or become incumbered by lien, mortgage, or otherwise, created by voluntary act of the insured, or within his control.

> 5. INSURANCE: pre-existing incumbrance on property.

But all incumbrance was made by those of whom plaintiff purchased, and before such purchase. Hence, it was not created by appellees, nor could they control its creating.

VIII. The policy is to be void if any change other than by death of the insured, whether by legal proceedings, judgment, voluntary act of the insured, or otherwise, take place in the interest, title, possession, or use of the subject of insurance, if such change in the possession or use makes the risk more hazardous.

> 6. INSURANCE: change in interest by judicial proceedings.

Now, it is true it is proved that the foreclosure and sheriff's sale of part of the insured property made the risk more hazardous, and it is the law of the case that the insurance is not separable; and if the policy is void as to part, it is as to all. But the difficulty is that, though the hazard was increased by "legal proceeding," those proceedings worked no change in either "the interest, title, possession, or use of the subject of insurance." Neither of these were affected by mortgage, judgment of foreclosure, or sheriff's sale. They could not be affected until sheriff's deed issued, and defendant makes no claim based upon such issuance, if there was one. Indeed, it alleges no more than that "the equity of redemption had almost expired."

IX. The policy is to be void if the insured now has or thereafter procures any other contract of insurance, valid or invalid.

> 7. INSURANCE: additional insurance by execution purchaser.

The "insured" procured no additional insurance. It was done by the Bradford

Lumber Company, to protect its interest as buyer at the sheriff's sale of the property. In *Independent School Dist. v. Fidelity Ins. Co.*, 113 Iowa 65, it was the insured who procured the additional insurance.

It is insisted that the court erred in failing to charge the jury that, if they found for plaintiff, they should deduct the insurance procured by the Lumber Company. To this there are several conclusive answers: (1)

8. INSURANCE: deductions from policy.

No such instruction was asked. (2) There is no evidence that the Lumber Company collected any insurance, or could. (3) No such relief is prayed, the only prayer being that defendant should be relieved from paying anything, because the policy had been forfeited.

For the error pointed out in the first paragraph of this opinion, the cause must be—*Reversed and remanded.*

PRESTON, C. J., LADD and EVANS, JJ., concur.